# Exhibit 48

State Court of Fulton County
***EFILED***
File & ServeXpress
Transaction ID: 55227083
Date:  Mar 31 2014 05:50PM
Cicely Barber, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

TRANSCARDIAC THERAPEUTICS, INC.,

      Plaintiff and Counterclaim Defendant,

v.

AJIT YOGANATHAN, PH.D., JORGE H.
JIMINEZ, PH.D., VINOD H. THOURANI,
M.D., and GEORGIA TECH FOUNDATION,
INC.,

      Defendants,

and

EMORY UNIVERSITY and GEORGIA TECH
RESEARCH CORPORATION,

      Defendants and Counterclaim Plaintiffs,

v.

OMAR M. LATTOUF, M.D., PH.D.,

      Additional Counterclaim Defendant.

Civil Action File No. 13EV017957B

## DEFENDANT EMORY UNIVERSITY'S ANSWER,
## AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

      Defendant Emory University ("Defendant" or "Emory"), by and through its undersigned

counsel, respectfully submits this Answer, Affirmative Defenses, and Counterclaim in response

to Plaintiff's Complaint.

## ANSWER

## PRELIMINARY STATEMENT

      As set forth more fully in Emory University's Motion for a More Definite Statement,

filed October 1, 2013 (after removal of this case to the United States District Court for the

Northern District of Georgia and assigned Civil Action No. 1:13-cv-03089-AT), Plaintiff's Complaint is so vague and ambiguous that Emory cannot reasonably prepare a response. Subject to a ruling on the pending Motion for a More Definite Statement, and without waiving any of Emory's arguments therein, Emory responds to the allegations of the Complaint as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1, and therefore they are denied.

2. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2, and therefore they are denied.

3. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3, and therefore they are denied.

4. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4, and therefore they are denied.

5. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5, and therefore they are denied.

6. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 6, and therefore they are denied.

7. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7, and therefore they are denied.

8. Emory admits that Dr. Thourani is a physician licensed to practice in the State of Georgia and that he practices within the specialty of cardiothoracic surgery. Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 8, and therefore they are denied.

9. Emory admits the allegations in paragraph 9.

10.     Emory admits that is it subject to personal jurisdiction within the State of Georgia, but Emory denies the remaining allegations in paragraph 10.

11.     Emory admits that it was properly served with process, but denies the remaining allegations in paragraph 11.

12.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12, and therefore they are denied.

13.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13, and therefore they are denied.

14.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14, and therefore they are denied.

15.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15, and therefore they are denied.

16.     Emory denies the allegations in paragraph 16.

17.     Emory denies the allegations in paragraph 17.

18.     Emory denies the allegations in paragraph 18.

19.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19, and therefore they are denied.

20.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20, and therefore they are denied.

21.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21, and therefore they are denied.

22.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22, and therefore they are denied.

23.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23, and therefore they are denied.

24.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24, and therefore they are denied.

25.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25, and therefore they are denied.

26.     Emory denies that it breached any duties or laws and denies that it ratified any alleged breaches of duties or laws.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 26, and therefore they are denied.

27.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27, and therefore they are denied.

28.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28, and therefore they are denied.

29.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29, and therefore they are denied.

30.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30, and therefore they are denied.

31.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31, and therefore they are denied.

32.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32, and therefore they are denied.

33.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33, and therefore they are denied.

34.     The allegations in paragraph 34 regarding agency state legal conclusions as to which no response is required.  Emory admits that Dr. Thourani is an employee of Emory University.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 34, and therefore they are denied.

35.     The allegations in paragraph 35 regarding agency state legal conclusions as to which no response is required.  Emory denies the allegations in paragraph 35.

36.     The allegations in paragraph 36 regarding vicarious liability and agency state legal conclusions as to which no response is required.  Emory denies the remaining allegations in paragraph 36.

37.     Emory admits that it has ownership rights in certain of Dr. Thourani's intellectual property.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 37, and therefore they are denied.

38.     Emory admits that Dr. Thourani has a duty to disclose certain intellectual property to Emory.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 38, and therefore they are denied.

39.     The allegations in paragraph 39 regarding venue state legal conclusions to which no response is required.  Emory further states that the United States District Court for the Northern District of Georgia constitutes the exclusive venue for Emory's patent law Counterclaim.

## **FACTS**

40.     Emory repeats and incorporates its answers to paragraphs 1-39 as if fully set forth herein.

41.     Emory admits that Dr. Lattouf is a Professor of Surgery at Emory's School of Medicine's Department of Surgery, Division of Cardiothoracic Surgery.  Emory is without

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 41, and therefore they are denied.

42.     Emory admits the allegations in the first sentence of paragraph 42.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 42, and therefore they are denied.

43.     Emory denies the allegations in paragraph 43.

44.     Emory admits that Frank Stout sent a letter dated September 25, 2002 to Dr. Lattouf and that a copy of that letter is attached to the Complaint as Exhibit A.  Emory further states that the September 25, 2002 letter speaks for itself and denies that Plaintiff's description is a complete summary of the terms of the letter.

45.     Emory denies Plaintiff's characterization of the Release Letter and states that the Release Letter attached to Plaintiff's Complaint as Exhibit A speaks for itself.  Emory denies the remaining allegations in paragraph 45.

46.     Emory admits the allegations in paragraph 46.

47.     Emory admits that Dr. Lattouf is the named inventor of the patent application identified in the Release Letter, but denies that it was his property.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 47, and therefore they are denied.

48.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 48, and therefore they are denied.

49.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 49, and therefore they are denied.

50.     Emory admits that it was provided with information about the formation of TCT. Emory denies the remaining allegations in paragraph 50.

51.     Emory admits that it has listed TCT as part of Emory's Portfolio of Start-Ups and admits that the quote in the second sentence of paragraph 51 is accurately quoted.  Emory denies the remaining allegations in paragraph 51.

52.     Emory denies the allegations in paragraph 52.

53.     Emory admits that after the date of the Release Letter, Dr. Sherer became Director of the Office of Technology Transfer for Emory.  Emory denies the remaining allegations in paragraph 53.

54.     Emory denies the allegations in paragraph 54.

55.     Emory admits that the CDA is attached to the Complaint as Exhibit B and that the document speaks for itself.  Emory denies the remaining allegations in paragraph 55.

56.     Emory admits that it never terminated the CDA and that the partially quoted language appears in the CDA.  Emory further states that the CDA speaks for itself and denies the remaining allegations in paragraph 56.

57.     Emory denies the allegations in paragraph 57.

58.     Emory denies that it regularly treated Dr. Lattouf as a representative of TCT and denies that Emory breached any legal duty.  Emory admits that Dr. Lattouf is a named inventor of the Release IP and that communications and interactions between Emory and Dr. Lattouf occurred, but Emory denies the characterization of any such communications and interactions in paragraph 58 to the extent inconsistent with the communications and interactions that actually occurred.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 58, and therefore they are denied.

59.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 59, and therefore they are denied.

60.     Emory admits that there was e-mail correspondence that Emory believes to have come from David Field directed to Dr. Sherer on January 10, 2005.  Emory admits that the quoted language partially quotes the e-mail, but denies Plaintiff's characterization of the communication to the extent it is inconsistent with the actual communication.  Emory denies the remaining allegations in paragraph 60.

61.     Emory admits that on January 11, 2005, Dr. Sherer sent an e-mail to David Field, and admits that the quoted language partially quotes the e-mail, but Emory denies Plaintiff's characterization of the communication to the extent it is inconsistent with the actual communication.  Emory denies the remaining allegations in paragraph 61.

62.     Emory admits that on January 11, 2005, Dr. Sherer sent an e-mail to David Field, and admits that the quoted language partially quotes the e-mail, but Emory denies Plaintiff's characterization of the communication to the extent it is inconsistent with the actual communication.  Emory denies the remaining allegations in paragraph 62.

63.     Emory admits that on January 11, 2005, Dr. Sherer sent an e-mail to David Field, and admits that the quoted language partially quotes the e-mail, but Emory denies Plaintiff's characterization of the communication to the extent it is inconsistent with the actual communication.  Emory denies the remaining allegations in paragraph 63.

64.     Emory admits that on January 11, 2005, Dr. Sherer sent an e-mail to David Field, and admits that the quoted language partially quotes the e-mail, but Emory denies Plaintiff's characterization of the communication to the extent it is inconsistent with the actual communication.

65.     Emory admits that the first amendment to the Release Letter had not been executed by February 11, 2005.  Emory denies the remaining allegations in paragraph 65.

66.     Emory admits that Dr. Lattouf sent a letter dated February 11, 2005 to Dr. Sherer and that the Complaint selectively quotes and paraphrases that letter.  Emory denies the remaining allegations in paragraph 66.

67.     Emory admits that Dr. Lattouf sent a letter dated February 11, 2005 to Dr. Sherer and that the Complaint selectively quotes and paraphrases that letter.  Emory denies the remaining allegations in paragraph 67.

68.     Emory admits that the Release Letter was amended and that the First Amendment is attached to the Complaint as Exhibit C.  Emory denies Plaintiff's characterization of the terms of the First Amendment to the extent it is inconsistent with the document itself.  Emory denies the remaining allegations in paragraph 68.

69.     The First Amendment is a document that speaks for itself.  Emory denies the allegations in paragraph 69 to the extent they are inconsistent with the First Amendment itself.

70.     Emory admits that Dr. Lattouf is the named inventor of the patent applications identified in the First Amendment, but denies that the "Improvements" were his property. Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 70, and therefore they are denied.

71.     Emory admits that the quoted language is a partial quotation of language in the First Amendment, but denies Plaintiff's characterization of the First Amendment to the extent it is inconsistent with the document itself.

72.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 72, and therefore they are denied.

73.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 73, and therefore they are denied.

74.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 74, and therefore they are denied.

75.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 75, and therefore they are denied.

76.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 76, and therefore they are denied.

77.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 77, and therefore they are denied.

78.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 78, and therefore they are denied.

79.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 79, and therefore they are denied.

80.     Emory admits that a $10,000 payment was made on July 26, 2005 to GTF from Dr. Lattouf's Residual Support Account.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 80, and therefore they are denied.

81.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 81, and therefore they are denied.

82.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 82, and therefore they are denied.

83.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 83, and therefore they are denied.

84.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 84, and therefore they are denied.

85.     Emory admits that a copy of a purported Affidavit of David C. Field is attached to the November 16, 2012 letter that is an exhibit to the Complaint.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 85, and therefore they are denied.

86.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 86, and therefore they are denied.

87.     Emory denies that there was any fraud or "platforms for fraud."  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 87, and therefore they are denied.

88.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 88, and therefore they are denied.

89.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 89, and therefore they are denied.

90.     Emory admits that a $10,000 payment was made on July 26, 2005 to GTF from Dr. Lattouf's Residual Support Account.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 90, and therefore they are denied.

91.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 91, and therefore they are denied.

92.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 92, and therefore they are denied.

93.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 93, and therefore they are denied.

94. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 94, and therefore they are denied.

95. Emory admits that a meeting concerning a possible merger occurred, but denies Plaintiff's characterization of the possible merger. Emory denies the remaining allegations in paragraph 95.

96. Although its investigation is continuing, Emory is presently without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 96, and therefore they are denied.

97. Emory admits that a merger was proposed and that potential difficulties were explored, but Emory denies the remaining allegations in paragraph 97.

98. Emory admits that GTRC was involved in conversations regarding the possible merger, but denies the remaining allegations in paragraph 98.

99. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 99, and therefore they are denied.

100. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 100, and therefore they are denied.

101. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 101, and therefore they are denied.

102. Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 102, and therefore they are denied.

103. Emory admits that a document purporting to be an agreement is attached to the Complaint as Exhibit D. Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 103, and therefore they are denied.

104.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 104, and therefore they are denied.

105.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 105, and therefore they are denied.

106.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 106, and therefore they are denied.

107.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 107, and therefore they are denied.

108.    Emory denies that information disclosed in a patent application is confidential information.  Emory denies the allegations in paragraph 108 to the extent they state a legal conclusion.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 108, and therefore they are denied.

109.    Emory denies the allegations in paragraph 109.

110.    Emory admits that Dr. Sherer was invited to attend a TCT board meeting and to join its business advisory board, which he declined.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 110, and therefore they are denied.

111.    Emory admits that Dr. Sherer attended a TCT board meeting and that Emory's Office of Technology Transfer provides support to start-up companies that have relationships with Emory.  Emory states that the reference to "technology" in paragraph 111 is so vague and ambiguous that Emory cannot reasonably respond.  As worded, Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 111, and therefore they are denied.

112.     Emory admits that the Second Amendment is attached to the Complaint as Exhibit E, but Emory denies TCT's characterization of the Second Amendment.

113.     The allegations in paragraph 113 regarding disclosures state legal conclusions to which no response is required.  Emory admits that the referenced documents include illustrations and that the allegations selectively quote from those documents.  Emory denies the remaining allegations in paragraph 113.

114.     Emory admits that the first quote of partially quoted language appears in the First Amendment and Second Amendment, but denies Plaintiff's characterization of those documents. Emory denies that the First Amendment and Second Amendment apply to any patent filings other than the patent filings identified in the documents and denies the remaining allegations in paragraph 114 to the extent they are inconsistent with the First Amendment and Second Amendment.

115.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 115, and therefore they are denied.

116.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 116, and therefore they are denied.

117.     Emory states that the reference to "IP" in paragraph 117 is so vague and ambiguous that Emory cannot reasonably respond.  As worded, Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 117, and therefore they are denied.

118.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 118, and therefore they are denied.

119.     Emory denies the allegations in paragraph 119.

120.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 120, and therefore they are denied.

121.     Emory admits that the language quoted in paragraph 121 appears in a November 18, 2010 e-mail from Dr. Lattouf to Emory.

122.     Emory denies the allegations in paragraph 122.

123.     Emory admits that a meeting occurred on November 30, 2010 between representatives of TCT and Emory.  Emory admits that it has not sent personal notice to Dr. Lattouf of any other technology of which Dr. Lattouf is not, to the best of Emory's knowledge, an inventor, but denies that it had any obligation to inform Dr. Lattouf of technologies that he did not invent.  Emory denies the remaining allegations in paragraph 123.

124.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 124, and therefore they are denied.

125.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 125, and therefore they are denied.

126.     Emory denies the allegations in paragraph 126 insofar as the allegation is specific to Emory.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 126, and therefore they are denied.

127.     Emory denies the allegations in paragraph 127.

128.     Emory denies the allegations in paragraph 128.

129.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 129, and therefore they are denied.

130.     Emory denies the allegations in paragraph 130.

131.     Emory denies the allegations in paragraph 131.

132.     Emory denies the allegations in paragraph 132.

133.    Emory denies the allegations in paragraph 133.

134.    Emory denies the allegations in paragraph 134.

135.    Emory admits that Dr. Lattouf has made a variety of unfounded accusations against Dr. Sherer and others, but denies the remaining allegations in paragraph 135.

136.    Emory denies the allegations in paragraph 136.

137.    Emory admits that a "suitable transapical valve conduit" was cited as prior art in the cited patent application.  Emory denies the remaining allegations in paragraph 137.

138.    Emory admits that a conference call occurred on June 26, 2012, but denies the remaining allegations in paragraph 138.

139.    Emory denies the allegations in paragraph 139.

140.    Emory admits that the cited e-mails are attached to the Complaint as Exhibit F. Emory admits that a meeting between Dr. Lattouf, Mike Bowers, Chris Anulewicz, Chris Kellner, Susanne Hollinger, and Todd Sherer occurred on July 17, 2012.  Emory denies the remaining allegations in paragraph 140.

141.    Emory admits that legally recognized intellectual property rights should be respected, but denies that any violation of any such right has occurred in the facts of this case. Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 141, and therefore they are denied.

142.    Emory admits that it has intellectual property and research misconduct policies, which policies speak for themselves.  Emory denies that any violation of any such policies occurred.  Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding Georgia Tech and the Board of Regents of the University System of Georgia and their affiliates in paragraph 142, and therefore they are denied.

143.     Emory admits that the quoted language in paragraph 143 accurately quotes Emory's Intellectual Property Policy.  Emory denies that any violation of any such policies occurred.  Emory denies the remaining allegations in paragraph 143.

144.     Emory admits that the Intellectual Property Policy applies to all Emory personnel. Emory denies the remaining allegations in paragraph 144.

145.     Emory admits that it has discussed its commitment to integrity and further states that no breach of integrity has occurred.  Emory states that the reference to "Defendant institutions" in paragraph 145 is so vague and ambiguous that Emory cannot reasonably respond. As worded, Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 145, and therefore they are denied.

146.     The Board of Regents Code of Conduct speaks for itself.  Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 146, and therefore they are denied.

147.     Emory admits that paragraph 147 partially quotes Emory's policies.  Emory denies that any violation of any such policies occurred or that the policy is otherwise implicated by the facts of this case.  Emory denies the remaining allegations in paragraph 147.

148.     Emory admits that paragraph 148 partially quotes Emory's policies.  Emory denies that any violation of any such policies occurred or that the policy is otherwise implicated by the facts of this case.  Emory denies the remaining allegations in paragraph 148.

149.     Emory admits that paragraph 149 partially quotes Emory's policies.  Emory denies that any violation of any such policies occurred or that the policy is otherwise implicated by the facts of this case.  Emory denies the remaining allegations in paragraph 149.

150.     Emory admits that paragraph 150 partially quotes the "Emory University Statement of Guiding Ethical Principles."  Emory denies that any violation of any such policies

occurred or that the policy is otherwise implicated by the facts of this case.  Emory denies the remaining allegations in paragraph 150.

151.     Emory states that the reference to "Joint Master Policy" in paragraph 151 is so vague and ambiguous that Emory cannot reasonably respond.  As worded, Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 151, and therefore they are denied.

152.     Emory admits that its policies and regulations are consistent with pertinent legal duties.  Emory denies that any breach of any policy, regulation, or duty has occurred.  Emory denies the remaining allegations in paragraph 152.

153.     Emory admits the allegations in paragraph 153.

154.     Emory admits that it has never claimed that any other individual co-invented the patents and patent applications constituting the Release IP.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 154, and therefore they are denied.

155.     Emory denies that there has been any appropriation of Plaintiff's property. Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 155, and therefore they are denied.

156.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 156, and therefore they are denied.

157.     Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 157, and therefore they are denied.

158.     Emory denies the allegations in paragraph 158.

159.   Emory admits that it received a copy of the letter attached to the Complaint as Exhibit G.  Emory admits that Dr. Sherer sent an e-mail to Dr. Lattouf on October 17, 2012. Emory denies the remaining allegations in paragraph 159.

160.   Emory denies the allegations in paragraph 160.

161.   Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 161, and therefore they are denied.

162.   Emory admits that it sent a letter requesting more information to Dr. Lattouf. Emory admits that it received a letter dated April 16, 2013 from Dr. Lattouf.  Emory denies the remaining allegations in paragraph 162.

163.   Emory denies the allegations in paragraph 163.

164.   Emory denies the allegations in paragraph 164.

165.   Emory denies the allegations in paragraph 165.

166.   Emory denies the allegations in paragraph 166.

167.   Emory admits that Apica Cardiovascular was named as the startup company of the year in 2010, but Emory denies that it was improper.  Emory denies that Apica Cardiovascular was named as the startup company of the year in 2011.  Emory is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 167, and therefore they are denied.

168.   Emory denies the allegations in paragraph 168.

169.   Emory denies the allegations in paragraph 169.

170.   Emory denies the allegations in paragraph 170.

171.   The allegations in paragraph 171 state legal conclusions as to which no response is required.  Emory denies the remaining allegations in paragraph 171.

172.   Emory denies the allegations in paragraph 172.

-19-

173.    Emory denies the allegations in paragraph 173.

174.    Emory denies the allegations in paragraph 174.

175.    Emory denies the allegations in paragraph 175.

**COUNT I:  BREACH OF CONTRACT (RELEASE LETTER AND AMENDMENTS)
AND LEGAL DUTIES DUE TO CONTRACT
(As to Emory, Yoganathan and Thourani Defendants)**

176.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

177.    Emory admits that the Release Letter and its amendments are contracts.  The remaining allegations in paragraph 177 state legal conclusions as to which no response is required.

178.    Emory denies the allegations in paragraph 178.

179.    Emory denies the allegations in paragraph 179.

180.    Emory denies the allegations in paragraph 180.

181.    Emory denies the allegations in paragraph 181.

182.    Emory denies the allegations in paragraph 182.

**COUNT II:  BREACH OF ORAL CONTRACT AND DUTY
(As to Defendants Yoganathan, Jiminez, Thourani, GTRC and GTF)**

183.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

184.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 184, and therefore they are denied.

185.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 185, and therefore they are denied.

186.    Emory denies the allegations in paragraph 186.

187.    Emory denies the allegations in paragraph 187.

188.    Emory denies the allegations in paragraph 188.

## COUNT III:  BREACH OF DUTY OF CONFIDENTIAL RELATIONS
### (As to All Defendants)

189.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set

forth herein.

190.    Emory denies the allegations in paragraph 190.

191.    Emory denies the allegations in paragraph 191.

192.    Emory denies the allegations in paragraph 192.

193.    Emory denies the allegations in paragraph 193.

194.    Emory denies the allegations in paragraph 194.

195.    Emory denies the allegations in paragraph 195.

196.    Emory denies the allegations in paragraph 196.

## COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (As to All Defendants)

197.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set

forth herein.

198.    Emory denies the allegations in paragraph 198.

199.    Emory denies the allegations in paragraph 199.

200.    Emory denies the allegations in paragraph 200.

## COUNT V. TORTIOUS INTERFERENCE WITH DEFENDANT EMORY CONTRACT
### (As to All Defendants Except Defendant Emory)

201.    Emory denies the allegations in paragraph 201.

202.    Emory is without sufficient knowledge or information to form a belief as to the

truth of the allegations in paragraph 202, and therefore they are denied.

203.    Emory denies the allegations in paragraph 203.

204.    Emory denies the allegations in paragraph 204.

205.    Emory denies the allegations in paragraph 205.

206.    Emory denies the allegations in paragraph 206.

### COUNT VI: BREACH OF LEGAL DUTIES AND CONTRACT
### (As to All Defendants)

207.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

208.    Emory denies the allegations in paragraph 208.

209.    Emory denies the allegations in paragraph 209.

210.    Emory denies the allegations in paragraph 210.

211.    Emory denies the allegations in paragraph 211.

### COUNT VII: FRAUD
### (As to All Defendants)

212.    Emory repeats and incorporates its answers to paragraphs 1-211 as if fully set forth herein.

213.    Emory denies the allegations in paragraph 213.

214.    Emory denies the allegations in paragraph 214.

215.    Emory denies the allegations in paragraph 215.

216.    Emory denies the allegations in paragraph 216.

217.    Emory denies the allegations in paragraph 217.

218.    Emory denies the allegations in paragraph 218.

219.    Emory denies the allegations in paragraph 219.

220.    Emory denies the allegations in paragraph 220.

221.    Emory denies the allegations in paragraph 221.

222.    Emory denies the allegations in paragraph 222.

223.    Emory denies the allegations in paragraph 223.

224.    Emory is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 224, and therefore they are denied.

225.    Emory denies the allegations in paragraph 225.

226.    Emory denies the allegations in paragraph 226.

227.    Emory denies the allegations in paragraph 227.

228.    Emory denies the allegations in paragraph 228.

229.    Emory denies the allegations in paragraph 229.

230.    Emory denies the allegations in paragraph 230.

231.    Emory denies the allegations in paragraph 231.

232.    Emory denies the allegations in paragraph 232.

233.    Emory denies the allegations in paragraph 233.

234.    Emory denies the allegations in paragraph 234.

235.    Emory denies the allegations in paragraph 235.

## COUNT VIII: CONSPIRACY
### (As to All Defendants)

236.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

237.    Emory denies the allegations in paragraph 237.

238.    Emory denies the allegations in paragraph 238.

239.    Emory denies the allegations in paragraph 239.

## COUNT IX: FALSE ADVERTISING
### (As to All Defendants)

240.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

241.    Emory denies the allegations in paragraph 241.

242.    Emory denies the allegations in paragraph 242.

243.    Emory denies the allegations in paragraph 243.

244.    Emory denies the allegations in paragraph 244.

## COUNT X:  EXPENSES OF LITIGATION (PURSUANT TO O.C.G.A. § 13-6-11)
### (Against All Defendants)

245.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

246.    Emory denies the allegations in paragraph 246.

247.    Emory denies the allegations in paragraph 247.

248.    Emory denies the allegations in paragraph 248.

## COUNT XI: PUNITIVE DAMAGES
### (Against All Defendants)

249.    Emory repeats and incorporates its answers to paragraphs 1-175 as if fully set forth herein.

250.    Emory denies the allegations in paragraph 250.

251.    Emory denies the allegations in paragraph 251.

252.    Emory denies each and every allegation of the Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred by the doctrine of release.

### THIRD AFFIRMATIVE DEFENSE

Some of Plaintiff's claims are barred by the statute of frauds.

### FOURTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred by the statute of limitations.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert some or all of its claims.

### SEVENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's contract claims fail for failure of consideration.

## COUNTERCLAIM

Defendant Emory University ("Emory"), having answered the Plaintiff's Complaint, asserts the following counterclaim against Counterclaim Defendants TransCardiac Therapeutics, Inc. ("TCT") and Omar M. Lattouf, as follows:

1.

This counterclaim seeks a declaratory judgment pursuant to O.C.G.A. § 9-4-1, *et seq.*, 28 U.S.C. § 2201, *et seq.*, and 35 U.S.C. § 256 regarding federal patent claims and judgment against Counterclaim Defendants on all counts.

## PARTIES, JURISDICTION AND VENUE

2.

Counterclaim Defendant TCT is a Georgia corporation and is subject to the personal jurisdiction of this Court and may be served through its counsel of record, its registered agent, or through the Georgia Secretary of State.

3.

Counterclaim Defendant Omar M. Lattouf, M.D., Ph.D. ("Dr. Lattouf") is an individual and a citizen of Georgia residing at 4262 Regency Court NW, Atlanta, Georgia 30327.  Dr. Lattouf is subject to personal jurisdiction in this Court and may be served at 4262 Regency Court NW, Atlanta, Georgia 30327.

4.

Subject matter jurisdiction exists in the United States District Court for the Northern District of Georgia under 28 U.S.C. §§ 1331, 1338, and 1454 (permitting removal of a civil action "in which any party asserts a claim for relief arising under any Act of Congress relating to patents").

5.

Venue is proper in the United States District Court for the Northern District of Georgia under 28 U.S.C. § 1391(b).

## FACTS RELEVANT TO THE COUNTERCLAIM

6.

Emory is a leading educational and research university located in Atlanta, Georgia.

7.

Dr. Lattouf currently is a Professor of Surgery, Division of Cardiothoracic Surgery, Department of Surgery in Emory's School of Medicine.

-26-

8.

Pursuant to Emory's Intellectual Property Policy, with certain exceptions inapplicable to the facts of this case, Emory owns all intellectual property created or developed by Emory personnel that is, among other things, related to an Emory employee's field of research or scholarly expertise.

9.

At various times, Emory has entered into agreements with Dr. Lattouf regarding the release of certain intellectual property to Dr. Lattouf, including the December 2001 provisional patent application.  These agreements are reflected in the September 25, 2002 letter from Frank Stout to Dr. Lattouf; the February 17, 2005 Amendment to the Release Letter; and the May 7, 2009 Second Amendment to the Release Letter (collectively, the "Lattouf Releases").  Copies of the Lattouf Releases are attached to Plaintiff's Complaint as Exhibits A, C & E.

10.

Emory released to Dr. Lattouf certain intellectual property through the Lattouf Releases, but the release was limited to the extent that it applied only to the specific disclosures and patent applications listed in the Lattouf Releases, only to inventions described therein that were "non-obvious and novel" and "to which [Dr. Lattouf] ha[d] sole inventorship claims and rights." All of the unexpired issued and pending patents included within the Lattouf Releases claim a common priority date of December 8, 2001 to provisional US Serial No. 60/340,062 and name Dr. Lattouf as the sole inventor.

11.

Each of the Lattouf Releases included a provision through which Emory retained a royalty-free license for Emory and Emory research collaborators "to make, use, and transfer the IP identified above for research, clinical, educational, and publication purposes only."  The

Lattouf Releases further required Dr. Lattouf to pay a royalty of 2% of any revenues generated from technology incorporating intellectual property covered by the Lattouf Releases.

12.

Upon information and belief, Dr. Lattouf assigned or licensed all of his ownership rights in the intellectual property included in the Lattouf Releases to Plaintiff TransCardiac Therapeutics, Inc. ("TCT") and TCT is the current owner of that intellectual property.

13.

Emory faculty other than Dr. Lattouf, along with certain faculty at the Georgia Institute of Technology ("Georgia Tech"), have pursued research and development activities relating to cardiac surgery and techniques. Several of these efforts have resulted in the development of certain patented transapical devices, which are devices that provide access to the apex of the heart during cardiac surgery.

14.

On December 7, 2010, the United States Patent and Trademark Office issued U.S. Patent No. 7,846,123 (the "'123 Patent") entitled "Conduit device and system for implanting a conduit device in a tissue wall," which lists Drs. Thomas A. Vassiliades, Ajit Yoganathan, and Jorge Jimenez as the inventors. The '123 Patent was assigned to Emory and Georgia Tech Research Corporation ("GTRC").

15.

On April 30, 2013, the United States Patent and Trademark Office issued U.S. Patent No. 8,430,836 (the "'836 Patent") entitled "Conduit device and system for implanting a conduit device in a tissue wall," which lists Drs. Thomas A. Vassiliades, Ajit Yoganathan, and Jorge Jimenez as the inventors. The '836 Patent was assigned to Emory and GTRC.

16.

The '836 Patent is a continuation patent of the '123 Patent filed on April 24, 2007.  The

'836 Patent and the '123 Patent family do not claim a common priority date or common

inventorship with any of the patents in the Lattouf Release.  The unique subject matter of the

'836 Patent and the '123 Patent were determined by the U.S. Patent Office to be patentably

distinct from other prior patents, including patents in the Lattouf Release, by claiming *inter alia*

a new system for a transapical attaching device "configured to compress at least a portion of [the

apex of the heart] tissue wall radially towards an outer surface of [an] inner tube so as to

establish a substantially fluid-tight seal," such as with the use of a radially expanding helical coil.

17.

Apica Cardiovascular Ltd. ("Apica") is an Ireland-based company founded in 2010, with

a wholly-owned subsidiary located in Atlanta, Georgia.

18.

In October 2010, Emory and GTRC jointly granted Apica an exclusive license to practice

a portfolio of intellectual property relating to transapical devices (the "Apica Portfolio").  The

Apica Portfolio includes the '123 Patent and the '836 Patent family.

19.

Dr. Lattouf has alleged that Emory, Georgia Tech, Dr. Yoganathan, and Dr. Jimenez

falsely claimed independent development of certain transapical techniques and devices.  These

allegations have been made in lengthy letters and in this action.  Dr. Lattouf has made repeated

claims that he invented some or all of the techniques and devices in the field of transapical

access.

20.

In a letter dated November 16, 2012, Dr. Lattouf alleged that certain Defendants and Apica claimed inventorship of technology incorporating "the precise same procedure for opening and closing the heart wall that is covered by my confidentially disclosed intellectual property, patent applications and patents and my research . . . ."  Dr. Lattouf further asserted that "Dr. Yoganathan has gone from Georgia Tech/Emory professor and head of certain testing labs to a founder and beneficial owner of the new company that publicly and falsely claims my own invention, proprietary ownership of inventions and confidential information he had received from me."

21.

In the same November 16, 2012 letter, Dr. Lattouf also asserted that "[Drs. Thourani and Yoganathan] never invented and never openly worked on minimally invasive transapical access to a beating heart.  That was my invention and focus."  Additionally, Dr. Lattouf stated that "for full context, all press releases and websites for Apica refer to 'heart access and closure', which is my invention . . . ."

22.

Dr. Lattouf's November 16, 2012 letter makes several other references to his purported invention of transapical devices, including claiming that "Emory's Office of Technology Transfer[] has both attempted to sell my invention and destroy my investment and the investment of my shareholders at the same time, while aiding and abetting others in unlawful conduct, including false public announcements."

23.

In a follow-up April 16, 2013 letter to Emory's Associate General Counsel, Dr. Lattouf alleged that "[a]ll of [Emory's Office of Technology Transfer's] extensive files and records of

personal contact (including formal disclosures and assignments and later proposals to raise money and promote the invention) affirm that I am the sole person at Emory who has pioneered and invented transapical access for minimally invasive heart surgery." Dr. Lattouf further asserted that "[i]n summary, this entire subject matter of minimally invasive transapical heart surgery plus all improvements thereafter made which constitute extensions, divisionals, continuations, are part of the IP released and assigned by Emory . . . ."

24.

TCT has also challenged Emory and Georgia Tech's involvement in the invention of transapical techniques and devices. In its Complaint, TCT alleges that "news articles [that] originated as press releases from Defendant[s] Emory and Georgia Tech . . . falsely and willfully said that the Defendants has invented what Dr. Lattouf invented and TCT owned, 'transapical open and closure procedure,' with 'conduit' for access to 'beating heart' as 'new minimally invasive procedure.'" Complaint ¶ 130. TCT further alleged that the articles and press releases "falsely claimed invention of the IP . . . and falsely expressed or implied the right of Defendant[s] Emory and Georgia Tech or its affiliates to license the IP in question . . . ." *Id.* ¶ 131. Additionally, TCT claimed that the "system referenced in the article is Dr. Lattouf's invention and TCT's property." *Id.* ¶ 132. In several other allegations, TCT makes additional assertions regarding Dr. Lattouf's purported rights to inventorship in intellectual property relating to transapical access. *Id.* ¶¶ 157, 158, 166, 168.

25.

Dr. Lattouf, through his correspondence and meetings with Emory, and TCT, through this lawsuit, have challenged the inventorship of the patents contained in the Apica Portfolio.

26.

Emory and GTRC believe that Drs. Thomas A. Vassiliades, Ajit Yoganathan, and Jorge Jimenez are correctly listed as the only inventors of the '123 Patent and the '836 Patent.

27.

The '123 Patent and the '836 Patent are owned by Emory and GTRC and involve the field of transapical devices, but Dr. Lattouf is not listed as an inventor on these patents.

28.

The Declaration and Power of Attorney for Patent Application for the '836 Patent includes a declaration by Thomas A. Vassiliades, Agit Yoganathan, and Jorge Hernan Jimenez that they believe they are "the original, first and joint inventor[s] . . . of the subject matter which is claimed and for which a patent is sought . . . ."

29.

The Declaration and Power of Attorney for Patent Application for the '123 Patent includes a declaration by Thomas A. Vassiliades, Agit Yoganathan, and Jorge Hernan Jimenez that they believe they are "the original, first and joint inventor[s] . . . of the subject matter which is claimed and for which a patent is sought . . . ."

30.

Dr. Lattouf and TCT have claimed that Dr. Lattouf invented the entire field of transapical techniques and devices and that Emory and Georgia Tech have falsely claimed independent development of certain transapical techniques and devices.

31.

The transapical techniques and devices that Emory and Georgia Tech have claimed were invented by persons other than Dr. Lattouf include the '123 Patent and the '836 Patent.

32.

Dr. Lattouf and TCT's broad claim of inventorship of the entire field has created a

controversy about the inventorship of the '123 Patent and the '836 Patent, which are patents

within the field of transapical techniques and devices.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT REGARDING INVENTORSHIP

33.

Emory repeats and restates paragraphs 1-32 of its Counterclaim as if fully set forth

herein.

34.

There is an actual controversy between Emory and GTRC, on the one hand, and Dr.

Lattouf and TCT, on the other hand, regarding inventorship of the U.S. Patents included in the

Apica Portfolio, including the '123 Patent and the '836 Patent.

35.

The Apica Portfolio includes issued U.S. Patents  (the '123 Patent and the '836 Patent)

for certain transapical cardiac surgery devices invented by Drs. Thomas A. Vassiliades, Ajit

Yoganathan, and Jorge Jimenez while employed by Emory or Georgia Tech.  Dr. Lattouf is

properly not named as an inventor on any of the issued U.S. Patents contained in the Apica

Portfolio, because among other reasons he did not collaborate with Drs. Vassiliades,

Yoganathan, and Jimenez to conceive the inventive subject matter claimed in the '123 Patent and

the '836 Patent, *i.e.*, a new system for a transapical attaching device "configured to compress at

least a portion of [the apex of the heart] tissue wall radially towards an outer surface of [an] inner

tube so as to establish a substantially fluid-tight seal," such as with the use of a radially expanding helical coil.

36.

Emory and GTRC exclusively licensed the Apica Portfolio to Apica, but retained ownership of the Apica Portfolio.  As owners of the U.S. Patents in the Apica Portfolio, Emory and GTRC have a recognized interest in the U.S. Patents that could be adversely affected by an action brought by Dr. Lattouf or TCT to challenge inventorship pursuant to 35 U.S.C. § 256.

37.

Dr. Lattouf has claimed in correspondence and in filed court documents that he invented the entire field relating to transapical access techniques and devices and TCT has asserted that Emory and GTRC falsely claimed rights in Dr. Lattouf's invention.  Dr. Lattouf and TCT have created a reasonable apprehension in Emory and GTRC through their letters and court filings that they are challenging or will challenge inventorship of the U.S. Patents in the Apica Portfolio.

38.

Pursuant to O.C.G.A. § 9-4-1, *et seq.*, 28 U.S.C. § 2201, *et seq.*, and 35 U.S.C. § 256, Emory and GTRC are entitled to a judgment declaring that Dr. Lattouf properly was not named as an inventor on any of the U.S. Patents contained in the Apica Portfolio.

WHEREFORE, Defendant Emory, having answered Plaintiff's Complaint and having set forth its Counterclaim against Plaintiff and Omar Lattouf, respectfully prays for the following relief:

(a)     That all of Plaintiff's claims be dismissed, with prejudice, and that judgment be entered in favor of Emory and against Plaintiff on all counts;

(b)     That the Court issue a declaratory judgment that Dr. Lattouf was properly not named an inventor on the '123 Patent and the '836 Patent;

-34-

(c)     That Emory be awarded its reasonable attorneys' fees and expenses in defending this action and in prosecuting its Counterclaim; and

(d)     That the Court award Emory such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure Emory demands a trial by jury of all issues so triable in this action.

Respectfully submitted, March 31, 2014.


KILPATRICK TOWNSEND
   & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
jbush@kilpatricktownsend.com
agarrett@kilpatricktownsend.com
robuckley@kilpatricktownsend.com

 s/  C. Allen Garrett Jr.
Joel D. Bush II
Georgia Bar No. 098775
C. Allen Garrett Jr.
Georgia Bar No. 286335
Robert E. Buckley
Georgia Bar No. 140280

*Counsel for Defendant Emory University*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing DEFENDANT EMORY

UNIVERSITY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM with the

Clerk of the Court using File & ServeXpress, which will automatically send e-mail notification

of such filing to attorneys of record, and have also served the following counsel by depositing a

copy of same in the U.S. Mail, with sufficient postage thereon to insure delivery, and properly

addressed as follows:

J. Robert Howard, Esq.
2393 Montview Drive, N.W.
Atlanta, Georgia 30305

William Q. Bird, Esq.
Kristen L. Beightol, Esq.
BIRD LAW GROUP, P.C.
2170 Defoor Hills Road
Atlanta, Georgia 30318

John W. Crongeyer, M.D.
CRONGEYER LAW FIRM, P.C.
2170 Defoor Hills Road
Atlanta, Georgia 30318

Julie Adams Jacobs, Esq.
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

Holmes J. Hawkins, III, Esq.
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309

Jill Warner, Esq.
McRAE BROOKS WARNER LLC
1175 Peachtree Street, N.E.
100 Colony Square Suite 2100
Atlanta, Georgia 30361

Dated:  March 31, 2014.

_s/   C. Allen Garrett Jr._____
C. Allen Garrett Jr.
Georgia Bar No. 286335

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
agarrett@kilpatricktownsend.com

*One of the Attorneys for*
*Defendant Emory University*