**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TRANSCARDIAC THERAPEUTICS, INC.,

Plaintiff and Counterclaim Defendant,

v.

AJIT YOGANATHAN, PH.D., JORGE H. JIMINEZ, PH.D., VINOD H. THOURANI, M.D., EMORY UNIVERSITY, GEORGIA TECH RESEARCH CORPORATION, and GEORGIA TECH FOUNDATION, INC.,

Defendants,

and

EMORY UNIVERSITY and GEORGIA TECH RESEARCH CORPORATION,

Defendants and Counterclaim Plaintiffs,

v.

OMAR M. LATTOUF, M.D., PH.D.,

Additional Counterclaim Defendant.

Civil Action No. 1:14-cv-00981-AT

**BRIEF IN SUPPORT OF PLAINTIFF/COUNTERCLAIM DEFENDANT TRANSCARDIAC THERAPEUTIC, INC.'S MOTION TO REMAND**

TCT[1] respectfully states as follows in support of its Motion to Remand:

## I. INTRODUCTION

### A. DEFENDANTS'[2] SECOND REMOVAL NOTICE IS REDUNDANT AND IMPROPER

Defendants have already attempted an unwarranted removal. Then, their basis was that this is really a patent law case dressed in "state law" clothing. The Parties fully briefed that issue, providing the Court with voluminous pages of argument, more than 100 citations and dozens of references to pleadings. As part of the multi-month briefing process, Defendants cited the fact that patent law claims and defenses were anticipated, including potential counterclaims:

> [E]ven assuming none of TCT's claims arose under federal patent law (which they do), when Emory is required to answer it may be required to file a declaratory judgment counterclaim regarding certain patents it co-owns with Defendant [GTRC]. Under the 2011 amendments to § 133(a), this counterclaim would fall within this Court's exclusive patent law jurisdiction and would independently trigger supplemental jurisdiction over TCT's claims.

Defendant Emory's Opposition to TCT's Motion to Remand ("Emory Opp."), [Doc. 1-35], at 2. Defendants even included a section in their opposition to TCT's

[1] Plaintiff/Counterclaim Defendant TransCardiac Therapeutics, Inc. is referred to herein as "TCT".

[2] The removing Defendants -- Defendants Emory University ("Emory"), Georgia Tech Research Corporation ("GTRC"), Georgia Tech Foundation, Inc. ("GTF") and Vinod Thourani, M.D ("Thourani") -- are referred to herein as "Defendants."

original remand motion called: "Emory's Potential Patent Law Counterclaim." *Id*. at 23. Thus, they considered counterclaims before now and alerted TCT and the Court of such consideration. The Court knew of that consideration in remanding this case.

In short, Defendants' latest removal is no more proper than the first and based on the same flawed premises. Defendants essentially disregard the Court's ruling and argue for a new federal removal standard, whereby state jurisdiction can be selectively destroyed by the actions of the Defendants, regardless of the claims asserted by the TCT. Defendants' proffered "standard" for removal would make jurisdictional questions mercurial, "standard-less" and prone to rampant forum-shopping by Defendants, who could always decide to pursue counterclaims or not based upon whether their preference for state or federal court. This is not the law. TCT respectfully requests that the Court follow the reasoning that led it to remand this case before to again remand this case to state court, where it belongs.

**B. INTRODUCTION TO THE REMOVAL STANDARD**

Federal courts are of "limited jurisdiction" and only hear specific types of cases. 28 USCS § 41(1). A plaintiff is "the master of his own claim." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994). The Defendants' "right to remove and plaintiff's right to choose his forum are ***not*** on equal footing" and

"uncertainties are resolved in favor of remand." *Id.* (Emphasis added).

Indeed, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are ***directed to construe removal statutes strictly***." *Univ. of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. Ala. 1999) (citation omitted) (emphasis added). "A ***presumption in favor of remand*** is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the constitution to resolve controversies in its own courts." *Id.* (Emphasis added). "[S]uch an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts" and "offends fundamental principles of separation of powers." *Id.* at 410 (citations omitted). In short, "[a]s the 11th Circuit has repeatedly admonished, '***[s]tate courts***, not federal courts, ***should be the final arbiters of state law***.'" *Hopkins v. DeVeaux*, 781 F. Supp. 2d 1283, 1295 (N.D. Ga. 2011) (citation omitted) (emphasis added).

This second removal should be denied for ***at least*** four reasons: 1) lack of timeliness as it is well beyond the 30-day period allowed under 28 U.S.C. § 1446(b); 2) the complaint only alleges state law claims; 3) no federal question has been introduced, nor does a substantial federal question need answered to resolve the at-issue state law claims; and 4) no claim involves a federal question that has

substantial importance beyond this case or to the federal system as a whole.

## II. ARGUMENT AND CITATION OF AUTHORITY

Defendants base their new removal on the counterclaims asserted against TCT and Third Party Complaint against Omar Lattouf, M.D. ("Dr. Lattouf"). Regardless of these claims' nature, removal was untimely and the essence of this action is premised on state law. As such, the Court's prior ruling controls and this case should again be remanded. Belated and reactionary counterclaims allegedly premised on federal law do not alter jurisdiction.

### A. DEFENDANTS' REMOVAL WAS UNTIMELY.

Under 28 U.S.C. § 1446(b)(3) removal notice "may be filed within 30 days after the receipt by the defendant…of a copy of an…order or other paper from which it may first be ascertained that the case is one which is or has become removable." Here, Defendants claim that they were put on notice that this case was removable by the Remand Order entered by this Court on February 28, 2014. Viewed in the light most favorable to remand, however, Defendants knew of the possibility of a federal issue before the Complaint's filing and of the possibility of a federal patent issue at the time of the Complaint's filing. Defendants' November 2013 briefing that discussed contemplated federal "counterclaims" expressly made this awareness and notice clear. *See* Emory Opp., [Doc.1-35].

Georgia courts have previously concluded that 28 U.S.C. § 1446(b)(3) "imposes a mandatory time limit on petitions for removal to federal court." *Nobles v. George T. Underhill & Assocs*., 2010 U.S. Dist. LEXIS 37710 *2 (W.D. Ky. 2010) (internal citations omitted).

> Removal offers the defendant thirty days to determine whether dual jurisdiction exists and to choose whether the case will be heard in state or federal court. The time limit is construed strictly, in order to promote efficiency and limit encroachment on state court jurisdiction.

*Id*. at *3-4. Further, "[f]ailure to recognize the federal nature of the claim within the thirty-day limit does not toll the removal." *Tabor v. Willey*, 2001 U.S. Dist. LEXIS 10445 *7 (N.D. Iowa 2001). Rather, there is "an affirmative burden on the defendant to exercise vigilance since failure to timely recognize a basis for removal may result in loss of that option." *Id*. at *8.

Defendants were ***at least*** on notice of their alleged federal patent claims at least by November 2012, one year before they admitted they were anticipating counterclaims in their briefing on TCT's first Motion to Remand and one year and nearing five months in advance of their counterclaims and second removal notice. Thus, they were more than a year too late in noticing removal.

Prior to the Complaint, Defendants knew there were patents involved in each of their relationships with Dr. Lattouf and TCT. On November 30, 2010, TCT and Defendant Emory representatives met. The meeting was attended by Emory's in-

house patent counsel, confirming Emory was aware there was an involved patent issue. Moreover, on November 16, 2012, Dr. Lattouf, on behalf of TCT, sent a demand letter to Defendants as well as Defendant Ajit Yoganathan, Ph.D. ("Yoganathan") stating that Dr. Lattouf and TCT claimed a right to the invention allowing transapical access to the heart (i.e., the at-issue intellectual property) and revealing that the underlying facts potentially present a patent law issue (hereinafter "the Letter"). [Doc. 1-8.] The Letter was Plaintiff's voluntary act equaling an "other document" under § 1446(d)(3). *Efford v. Milam*, 368 F. Supp. 2d 380, 385 (E.D. Pa. 2005); *Russell v. Home State County Mut. Ins. Co.*, 244 F. Supp. 2d 669 (E.D. La. 2003); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000); *Rahwar v. Nootz*, 863 F. Supp. 191, 192 (D.N.J. 1994); *Hessler v. Armstrong World Indus.*, 684 F. Supp. 393, 394 (D. Del. 1988); *Broderick v. Dellasandro*, 859 F. Supp. 176, 180 (E.D. Pa. 1994); *see also Cameron v. Teeberry Logistics, LLC*, 920 F. Supp. 2d 1309 (N.D. Ga. 2013) (indicating that several different informal communications from Plaintiff could serve as "other document" under § 1446). It also comports with the purpose behind the statute: "to commence the running of the thirty day period once the defendant receives actual notice that the case has become removable, which may be communicated in a formal or informal manner." *Efford*, 368 F. Supp. 2d at 385.

The Letter states that Defendants GTRC and GTF "were well advised and aware of the confidential and propriety [sic] nature of the information and tests divulged by [Dr. Lattouf]…and agreed to keep all confidential and respect [Dr. Lattouf's] intellectual property." [Doc. 1-8 at 3.] It explains that Dr. Lattouf "understood that the internal protocols at Georgia Tech call for the confidentiality of any intellectual property disclosed in connection with the performance of testing services utilizing Georgia Tech facilities." *Id.* This notified Defendants GTRC and GTF that Dr. Lattouf asserts ownership of at-issue intellectual property.

The Letter also states that Dr. Lattouf shared the transapical access method of conducting intra cardiac repair with Defendant Thourani, and that he was "advised of [Dr. Lattouf's] company [TCT], and its interest and [Dr. Lattouf's] interest in developing and owning and commercializing for profit advances in medicine, including matters that [Dr. Lattouf] had patented and confidential information that [Dr. Lattouf] possessed in furtherance of that area." [Doc. 1-8 at 3.] This put Defendant Thourani (a member of Emory's faculty) and Emory on notice that Dr. Lattouf and, thus, TCT were asserting the intellectual property ownership rights as of November 2012.

TCT also put each Defendant on notice[3] of the potential for a patent issue based on the facts underlying this case by filing the Complaint, nearly one year after the Letter. It is notable that no named Defendant substantively responded to the Letter and, instead, refused to respond or defend their actions. For Defendants to now claim that they were unaware of a potential patent issue potentially giving rise to a claim under federal patent law until the Remand Order is disingenuous. Thus, Defendants' removal was untimely under 28 U.S.C. § 1446(b) as filed over a year after the Letter and months after Defendants Opposition to Plaintiff's Original Motion to Remand, which acknowledged their anticipated counterclaim.

Defendants also claim that their assertion of federal law declaratory judgment counterclaims on March 31, 2014 is the document in which they first ascertained that this case had become removable under 28 U.S.C. § 1446(b)(3). [Doc. 1 at 3.] 28 U.S.C. § 1446(b)(3), itself, however, upends their argument: "a notice of removal may be filed within 30 days after ***receipt by*** the defendant…of a copy of an…order or other paper from which it may first be ascertained that the

[3] Though not a removing Defendant, Yoganathan was also on notice in November 2012 that the underlying facts potentially gave rise to a federal patent issue. The Letter states that as a member of TCT's Scientific Advisory Board and generally as a consultant to TCT, he "received in confidence…confidential and proprietary information and knowledge of [Dr. Lattouf's] intellectual property, [including] patent pending inventions and patented inventions." [Doc. 1-8 at 2.] This language clearly indicated that Dr. Lattouf was claiming ownership to the inventions developed, even asserting some had already been patented under his name.

case is one which is or has become removable." (Emphasis added). Defendants Emory and GTRC's counterclaims and third party complaint were served, not ***received***, by them. In interpreting the amendment to § 1446 that made the 30-day period law, a Maryland court stated: "the amended pleading, motion, order to [sic] other paper must emanate from either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity." *Potter v. Carvel Stores of NY, Inc.*, 203 F. Supp. 462, 467 (D. MD. 1962). Further, "[t]he amendment was not designed to permit a defendant to remove by reason of an issue he interjected into the state proceedings." *Id*. That is what Defendants did in this case in depriving TCT of its role as master of the Complaint and improperly arguing for removal based on their own actions. This interpretation goes hand-in-hand with the underlying policy for strict construction and all doubts should be resolved in favor of remanding the case to state court. *Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.*, 105 F. Supp. 2d 1336 (N.D. Ga 2000); *Mallalieu-Golder Ins. Agency v. Exec. Risk Indem*. 254 F. Supp. 2d 521 (M.D. Pa. 2003).

Defendants had notice that the factual situation underlying TCT's Complaint potentially involved a claim under federal patent law in November 2012 and, certainly, when the Complaint was filed on August 9, 2013. Thus, the 30-day deadline was triggered by at least November 2012, making Defendants' remand

notice more than one year too late per 28 U.S.C. § 1446(b)(3). *See MWS, Inc. v. Knight Tech. Servs., Inc.*, 2012 U.S. Dist. LEXIS 113900 (M.D. Al. 2012) (holding that neither counterclaims nor a third party complaint were a proper removal basis). Thus, TCT respectfully requests that its Motion to Remand be GRANTED.

Defendants' counterclaim and second removal notice raise a red flag, given their knowledge of the potential for federal issues as of ***at least*** November 2012. Indeed, it was not until after their first attempt to remove this case failed that they filed their counterclaims, revealing the counterclaims as a blatant attempt to forum shop and deprive the TCT of its right to choose the forum. *Burns*, 31 F.3d 1092 (1994). Further, since removal cannot be based on a counterclaim or third party complaint, a delay in filing a counterclaim or a third party complaint without cause is not a permissible reason under which the time limitations of § 1446 may be extended. 28 U.S.C. § 1454(b)(2). Section 1454(b)(2) requires that cause be shown for these limitations to be extended. It is clear from the language of the Letter and the facts in the Complaint that the information on which Defendants base their counterclaims and third party complaint was known to them when the Complaint was filed. To allow them to use these claims as a second attempt to forum shop is improper and remand is appropriate.

## B. REMOVAL IS IMPROPER FOR THESE RIPE STATE CLAIMS.

As previously determined by this Court, TCT, the master of the Complaint, has not alleged federal law claims. Not all claims involving patents are grounded in federal law. Moreover, state interest predominates and special circumstances exist that make that interest great; thus, this case is appropriate for state court.

**1. TCT'S COMPLAINT ALLEGES CLAIMS UNDER STATE LAW.**

The Complaint was filed in Fulton County State Court on August 9, 2013. It alleges that Dr. Lattouf, a Professor of Surgery at Emory's School of Medicine's Department of Surgery in Division of Cardiothoracic Surgery, entered into multiple agreements with Defendant Emory related to several of his inventions for which patent applications had been filed. [Doc. 1-1 at ¶¶ 44, 48, 68-69, 112.] TCT owns the rights and interest to these inventions. [Doc. 1-1 at ¶ 179.] It also alleges that, related to the assigned inventions, Dr. Lattouf, on behalf of TCT, orally contracted with Defendants Yoganathan, Jiminez, Thourani, GTRC and GTF to keep information shared with them regarding the inventions confidential in building, testing and research related to the inventions. [Doc. 1-1 ¶ 184.] The Complaint explains that the named Defendants did not comply with terms of these contracts and publicly (and privately) represented the inventions as their own. [Doc. 1-1 at Counts I-XI.] Based on these assertions, it alleges the following Counts: (1) breach of contract and legal contractual duties (I), (2) breach of oral

contract and duty (II), (3) breach of duty of confidential relations (III), (4) tortious interference with business relations (IV), (5) tortious interference with contract (V), (6) breach of legal duties and contract (VI), (7) fraud (VII), (8) conspiracy (VIII), (9) false advertising (IX), (10) expenses of litigation (X), and (11) punitive damages (XI). [Doc. 1-1 at Counts I-XI.]

Each of the 11 Complaint Counts are state law claims defined under State law. Georgia law defines a contract (O.C.G.A. § 13-1-1), when it needs to be in writing (O.C.G.A. § 13-5-30) and the elements required for a breach claim (*see, e.g., Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 413 (2012)) (quotation omitted). Moreover, Georgia law defines confidential relations (O.C.G.A. § 23-2-58) and acquisition of antagonistic rights by one in a confidential relationship (O.C.G.A. § 23-2-59). It also defines the elements of tortious interference with business relations (*see, e.g., Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (2007)), tortious interference with contractual relations (*see, e.g., Kinson Cook of Ga, Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 557 (2007)), false advertising (O.C.G.A. § 10-1-421), civil conspiracy (*see, e.g., Miller v. Lomax*, 266 Ga. App. 93, 103 (2004) (citations omitted)), legal fraud (O.C.G.A. § 23-2-52) and the tort of fraud (*see, e.g., Mecca Constr., Inc. v. Maestro Invs., LLC*, 320 Ga. App. 34, 41 (2013)). Georgia law further directs when punitive damages (O.C.G.A. § 51-12-5.1) and

expenses of litigation (O.C.G.A. § 13-6-11) are appropriate.

### 2. Not All Claims Involving Patents Are Federal.

In general, "[a] civil action in which any party asserts a claim for relief ***arising under*** any Act of Congress relating to patents…may be removed to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C.S. § 1454(a) (emphasis added). All cases involving a patent law claim, however, ***do not*** fall within the Federal Circuit's jurisdiction. *See Granger v. Croscill Home, LLC*, 2011 U.S. Dist. LEXIS 7203, 6-7 (S.D. Ala. 2011) ("The possibility of some ancillary patent-related issue does not confer jurisdiction; not all patent law questions demand federal jurisdiction-state courts can and do resolve such issues.") In fact, "[t]o hold that all questions of patent infringement are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court." *MDS (Can)., Inc. v. RAD Source Techs., Inc*., 720 F.3d 833, 843 (11th Cir. Fla. 2013) (citations omitted). Thus, allegations based on inventions for which patent applications have been filed ***do not*** mandate federal jurisdiction.

### 3. By Law, TCT's State Claims Require State Determination.

The newly filed counterclaims are based on federal patent laws, including 35 U.S.C. § 256. *See* Defendant Emory's Answer, Affirmative Defenses and

Counterclaim, [Doc. 1-48]; GTRC's Answer, Defenses and Counterclaim, [Doc. 1-50]. In asserting that the counterclaims made removal proper, Defendants cite 28 U.S.C. § 1454(a). Though not referenced by Defendants, 1454(d) states: "[i]f a civil action is removed solely under this section, the district court—(1) shall remand all claims that are neither a basis for removal under subsection (a) nor within the original or supplemental jurisdiction of the district court under any Act of Congress; and (2) ***may***, under the circumstances specified in section 1367 (c) [28 USCS § 1367(c)], ***remand*** any claims within the supplemental jurisdiction of the district court under section 1367 [28 USCS § 1367][4]." 28 U.S.C.S. § 1454(a), (d)(2) (emphasis added).

The sole basis for Defendants' second removal is 28 U.S.C. § 1454. *See* Second Removal Notice, [Doc. 1], at 4. Defendants cite other federal statutes, but that is the only ***removal*** statute. As such, subsection (d) applies.

First, pursuant to § 1454(d)(1), TCT's underlying claims should be remanded. TCT's claims are not the basis for Defendants' removal. Further, as evidenced by this Court's Remand Order, TCT's Complaint is grounded in state

[4] Under 28 U.S.C.S. § 1367(a), ". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

law and appropriate for adjudication in state court. *See* Remand Order, [Doc. 1-43].

Second, the recent counterclaims do not fall under supplemental jurisdiction. District Courts may decline to exercise supplemental jurisdiction and remand a claim if: (1) it "raises a novel or complex issue of State law," (2) it "substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C.S. §§ 1367(c), 1454(a), (d)(2). ***Any one*** of these factors "is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker v. Scrap Metal Processors, Inc*., 468 F.3d 733, 743 (11th Cir. Ga. 2006) (citation omitted).

At least three factors apply to permit remand. The Complaint raises 11 state law issues, many of which are complex. These state law claims substantially predominate over any issue, including the patent law claims asserted by Defendants' counterclaims. "[T]he Court may decline supplemental jurisdiction where 'the federal tail…wag[s] what is in substance a state dog.'" *Curry v. High Springs Family Practice Clinic & Diagnosis Ctr., Inc*., 2008 U.S. Dist. LEXIS 99462 (N.D. Fla. 2008) (internal citations omitted). "Substantial predominance

exists 'when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *Id*. (citations omitted).

All 11 Counts are state law Counts to be decided under state law pursuant to this Court's Remand. It is merely ancillary that Defendants have filed a claim of ownership of the patents. As above, this case would not exist but for the contracts in which all of its claims sound. Further, the patents that Defendants claim ownership of are predated by the contracts of release and assignment on which Plaintiff bases its contract claims, making the issues under contract law controlling.

Exceptional circumstances also exist. ***First***, taken as true, the Complaint facts involve dishonesty and breaches of integrity by some of Georgia's finest academic institutions, their administration and faculty. These facts are extraordinary. No one has a greater interest in the integrity of its institutions than Georgia and its citizens. This case is of utmost importance to Georgians and its claims of dishonesty and cheating are anchored in basic state law. ***Second***, Defendants' contention that this case is suddenly grounded in federal law is curious given their assertion of counterclaims after remand, masking their forum shopping by saying that this case now presents a federal question based on realized counterclaims that they told the Court were anticipated in their briefing on remand.

Under the allegations (taken as true), "judicial economy, convenience, and

fairness to the parties" support the existence of exceptional circumstances here that are best addressed in state court. *Parker*, 468 F.3d at 745. Aside from the reasons mandating remand, remand is also proper under the "permissive" authority of 28 U.S.C.S. § 1367 (c), because it is more sensible, simple, convenient, and judicially economic to evaluate 11 state law claims, defined under state law, in state court.

### 4. THE 11TH AMENDMENT, GEORGIA CONSTITUTION AND GEORGIA TORT CLAIMS ACT REQUIRE REMAND.

The longstanding interpretation and application of the 11th Amendment to the Constitution is that: "although a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens." *Principality of Monaco v. Miss.*, 292 U.S. 313, 322 (1934); *see also, Gouch v. Cal. Franchise Tax Bd*., 2009 U.S. Dist. LEXIS 84023 (N.D. Ga. 2009) ("[S]uits in federal court against a state or its agencies by a citizen of its own or another state are barred") (citations omitted). "Georgia has specifically preserved its Eleventh Amendment sovereign immunity for private tort claims brought in federal court against it and its departments, agencies, officers, or employees." *White v. City of Atlanta*, 2007 U.S. Dist. LEXIS 93073, 14-15 (N.D. Ga. 2007) (citing O.C.G.A. § 50-21-23(b); Ga. Const. Art. I, § 2, P 9(f); *Gamble v. Fla. Dept. of Health and Rehab. Servs.*, 779 F.2d 1509, 1511-20 (11th Cir. 1986)). In fact, the Georgia

Legislature included the following prohibition of federal suit regarding state tort actions in the State Tort Claims Act ("GTCA"):

> ***All tort actions*** against the state under this article ***shall*** be brought in the state or superior court of the county wherein the loss occurred; provided, however, that, in any case in which an officer or employee of the state may be included as a defendant in his individual capacity, the action may be brought in the county of residence of such officer or employee.

O.C.G.A. § 50-21-28 (emphasis added).

The State Attorney General has appeared on behalf of two individual Defendants -- Yoganathan and Jiminez -- and answered that this lawsuit belongs in state court. In fact, in their Answer signed by the Attorney General, Defendants Yoganathan and Jiminez allege that "[t]his Court lacks subject matter jurisdiction." Defendant Yoganathan and Jiminez's Answer to Complaint, [Doc. 1-21 at 2]. Their Answer further alleges that "all actions allegedly taken by [them] were taken while acting within the scope of their official duties or employment with a state government entity of the State of Georgia." *Id.* at 2, 4. The Attorney General invoked the GTCA multiple times in their Answer. *Id*. at 2-4. Given that the State considers itself a party to this action,[5] has invoked the GTCA and also has alleged that the actions that are the subject of the Complaint were within the scope of

[5] TCT disputes that the State is a proper party, but that issue has not been decided, so, for now, the State's counsel is involved and asserting sovereign immunity.

Defendants Yoganathan and Jiminez' official duties, this case requires remand as a matter of law under the United States and Georgia Constitutions and GTCA.

### C. THE COMPLAINT FAILS THE FOUR-PART *GRABLE* TEST.

#### 1. CLAIMS THAT FAIL THE *GRABLE* TEST REQUIRE REMAND.

Defendants also cite to 28 U.S.C § 1338, to support the removal of this action. [Doc. 1 at 4.] According to the Supreme Court, "[l]inguistic consistency, to which [the Supreme Court has] historically adhered, demands that § 1338(a) jurisdiction likewise extend ***only*** to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Id*. at 808-809 (citation omitted) (emphasis added).

In July 2013, the Supreme Court re-confirmed its four-part test to determine whether a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 133 S. Ct. at 1065 (citation omitted). It explained that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, ***and*** (4) capable of resolution in federal court

without disrupting the federal-state balance approved by Congress." *Id*. (Emphasis added). Only "[w]here all four of these requirements are met,…jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id*. (Citation omitted). The test was originally set forth in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*., 545 U.S. 308, 313-314 (2005).

### 2. THE *GRABLE* TEST HAS REQUIRED REMAND UNDER SIMILAR FACTS.

In *Gunn*, the Supreme Court was tasked with determining "whether a state law claim alleging legal malpractice in the handling of a patent case must be brought in federal court." 133 S. Ct. at 1062. On appeal, Minton argued that a Texas trial court's order should be vacated and the case dismissed because the trial court lacked subject matter jurisdiction "[b]ecause his legal malpractice claim was based on an alleged error in a patent case, it 'aris[es] under' federal patent law for purposes of 28 U.S.C. § 1338 (a)." *Id*. at 1063. Minton's argument -- that there was important federal question lurking -- was rejected by a divided panel of the Texas Court of Appeals. *Id.* The Supreme Court granted cert. *Id*. at 1064.

Applying the four-part inquiry, the Supreme Court decided that Vernon Minton's legal malpractice claim did not arise under federal patent law. *Gunn*, 133

S. Ct. at 1062, 1064. "Resolution of a federal patent question [was] necessary to Minton's case" and that federal issue was actually disputed. *Id.* at 1065-1066. But, the third and fourth requirements of the test were not met. *Id*. at 1066-1068. The fourth requirement was not met because the federal issue was not substantial in the relevant sense. *Id*. at 1066. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim "necessarily raise[s] a disputed federal issue[.]" *Id.* The substantial inquiry "looks instead to the importance of the issue to the federal system as a whole." *Id.* Also, because of the absence of a substantial federal issue, the fifth requirement, which "is concerned with the appropriate 'balance of federal and state judicial responsibilities,'" was not met. *Id*. at 1068. The Supreme Court summarized the reasons for rejecting federal jurisdiction: "There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties **in that case**." *Id*. at 1068 (emphasis added). It continued: "But something more, demonstrating that the question is significant to the federal system as a whole, is needed. That is missing here." *Id.*

The *Gunn* Court explained that "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)." *Gunn*, 133 S. Ct. at 1065. According to the Supreme

Court, "[a]lthough such cases may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." *Id.*

The same is true in the case at bar. In fact, the 11th Circuit Court of Appeals remanded a case that -- like this one -- involved breach of agreement and confidential relations claims. *See Mannsfeld v. Phenolchemie, Inc.*, 466 F. Supp. 2d 1266 (S.D. Ala. 2006). The action was filed in the Circuit Court of Mobile County, Alabama, but the defendants removed it to federal court, alleging that federal jurisdiction existed because the case involved claims that necessitated resolution of a substantial question of federal patent law. *Id.* at 1268. The complaint alleged that the "plaintiff developed a business relationship with representatives of the defendants, during which plaintiff, in confidence, communicated to defendants the nature of plaintiff's novel idea, trade secret and/or other confidential information." *Id.* Specifically, the complaint, very similar to the action at bar, alleged the following eight causes of action: (1) conversion, (2) fraudulent concealment, (3) unjust enrichment, (4) misappropriation of trade secrets, (5) breach of fiduciary duty, (6) tortious interference with contractual or business relations, (7) breach of implied contract, and (8) injunctive relief. *Id.* Degussa AG had undertaken lab tests and pilot runs that allegedly verified the

plaintiff's novel idea. *Id.* The plaintiff asserted that he was assignee of any and all rights of Deguassa AG as well as to the novel idea. *Id.*

The plaintiff in *Mannsfeld* cited "numerous cases which have concluded that federal question jurisdiction does not exist for claims brought by a putative inventor against one who, in breach of an agreement or other confidential relationship, wrongfully disclosed and misappropriated the plaintiff's invention by obtaining a patent on it. *Mannsfeld*, 466 F. Supp. at 1270 (*citing* Doc. 29, pp. 5-6 *citing Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 49 S.Ct. 356, 73 L. Ed. 752, 1929 Dec. Comm'r Pat. 288 (1929).[6] In remanding the case, the 11th Circuit explained that "[a]lthough obtaining a patent which allegedly includes plaintiff's trade secret or idea is the method by which defendants allegedly violated plaintiff's rights, plaintiff ***asserts no rights pursuant to the patent or under patent law***" and "…***only asserts rights with regard to the trade secret or idea itself***." *Id.*

[6] *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir.2001) *Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir.2001); *AT&T v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992); *Montecatini Edison S.P.A. v. Ziegler*, 486 F.2d 1279 (D.C. Cir. 1973); *Eckert v. Braun*, 155 F.2d 517 (7th Cir. 1946); *Kleinerman v. Snitzer*, 754 F.Supp. 1 (D. Mass. 1990); *Miller v. Rudolph Wurlitzer Co.*, 48 F.Supp. 772 (D. N.Y. 1942); *Plastic & Metal Fabricators, Inc. v. Roy*, 163 Conn. 257, 303 A.2d 725 (Conn. 1972); *Edwards v. Gramling Engineering Corp.*, 322 Md. 535, 588 A.2d 793 (Md. 1991); *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 736 N.E. 2d 434 (Mass. App. Ct. 2000); *Ogontz Controls Co. v. Pirkle*, 346 Pa. Super. 253, 499 A.2d 593 (Pa. Super. 1985)).

(Emphasis added). According to the Court, "[t]he patent may be evidence in support of plaintiff's allegations, '***but the mere presence of the patent does not create a substantial issue of patent law***.'" *Id*. (Citation omitted) (emphasis added). The Court continued: "[c]onsideration of whether the idea at issue was novel or confidential does not require the resolution of a substantial issue of patent law" and that the "[p]laintiff's claims require that he show that defendants disclosed or used trade secrets of confidential information or ideas, a burden that can be met without requiring the resolution of a substantial issue of patent law." *Id*. (citation omitted). So too here. Even if TCT held no patent rights, Plaintiff could allege ***and prove*** violations of duties and agreements to keep disclosed information confidential and to work in Dr. Lattouf/TCT's best interests.

### 3. THESE CLAIMS <u>FAIL</u> THE *GRABLE* TEST AND REQUIRE REMAND.

Though the patents referenced in the Complaint may be evidence in support of Plaintiff's allegations, their mere presence does not create a substantial issue of patent law. *See Mannsfeld*, 466 F. Supp. at 1270. These claims, too, fail on the third and fourth issues set forth by the recent *Gunn* decision: they are not substantial and they are not capable of resolution in this Court without disrupting the federal-state balance approved by Congress. *See Gunn*, 133 S. Ct. at 1066-1068. Here -- just like in *Mannsfeld* -- consideration of whether the ideas at issue

were novel or confidential does not require the resolution of a substantial issue of patent law. *See Mannsfeld*, 466 F. Supp. at 1270 (citation omitted); *see also, id*. (the "burden that can be met without requiring the resolution of a substantial issue of patent law") (citation omitted). As in *Mannsfeld*, no rights in this lawsuit are pursued related to the patent or under patent law. 466 F. Supp. at 1270. As the Supreme Court explained in *Gunn*, while this lawsuit may necessarily raise disputed questions of patent law, this case is by its nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction. 133 S. Ct. at 1065. Instead, this lawsuit is a dispute among parties related to state law, which should be decided by a state court applying state law.

## III. CONCLUSION

For the reasons set forth in detail above, including the untimeliness of the Defendants' removal, as well as, the combination of no substantial federal question and the predominant state interests involved, TCT respectfully requests that the Court consider and GRANT their Motion to Remand, thus remanding this case back to the State Court of Fulton County, Georgia, and granting such other and further relief as deemed just and appropriate.

Respectfully submitted, this 16th day of April, 2014.

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

**CRONGEYER LAW FIRM, P.C.**
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com

*/s/ Kristen L. Beightol*
William Q. Bird
Georgia State Bar No. 057900
Kristen L. Beightol
Georgia State Bar No. 425814

**BIRD LAW GROUP, P.C.**
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 873-4696
Facsimile: (404) 872-3745
wqb@birdlawgroup.com
klb@birdlawgroup.com

*/s/ J. Robert Howard*
J. Robert Howard
Georgia State Bar No. 370900

2393 Montview Drive, N.W.
Atlanta, GA 30305
Telephone: (404) 367-9924
Facsimile: (404) 351-8997
Jrh2393@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed a copy of the foregoing *Brief In Support Of Plaintiff/Counterclaim Defendant Transcardiac Therapeutic, Inc.'s Motion To Remand* with the Clerk of Court using the CM/ECF system and served a copy upon counsel for Defendants by electronic filing as follows:

Joel D. Bush II
C. Allen Garrett, Jr.
Robert E. Buckley
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528

Jill Warner
Michael E. Brooks
McRae Brooks Warner LLC
1175 Peachtree Street, NE
100 Colony Square, Suite 2100
Atlanta, Georgia 30361

Holmes J. Hawkins, III
James J. Mayberry
Amy Yervanian Jones
Andrew Mutter
King & Spalding
1180 Peachtree Street, NE
Atlanta, Georgia 30309

Julie Adam Jacobs
Senior Assistant Attorney General
W. Wright Banks, Jr.
Deputy Attorney General
Department of Law, State of Georgia
40 Capitol Street, S.W.
Atlanta, Georgia 30334-1300

Respectfully submitted this 16th day of April, 2014,

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

Crongeyer Law Firm, P.C.
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com

## Font Certification

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was prepared using Times New Roman 14 point type as provided in Local Rule 5.1C.

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

Crongeyer Law Firm, P.C.
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com