# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TRANSCARDIAC THERAPEUTICS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> AJIT YOGANATHAN, PH.D., JORGE H. JIMINEZ, PH.D., VINOD H. THOURANI, M.D., and GEORGIA TECH FOUNDATION, INC., <br><br> Defendants, <br><br> and <br><br> EMORY UNIVERSITY and GEORGIA TECH RESEARCH CORPORATION, <br><br> Defendants and Counterclaim Plaintiffs, <br><br> v. <br><br> OMAR M. LATTOUF, M.D., PH.D., <br><br> Additional Counterclaim Defendant. | Civil Action No. 1:14-cv-00981-AT |

## DEFENDANT AND COUNTERCLAIM PLAINTIFF
## EMORY UNIVERSITY'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

In 2011, Congress abrogated the "*Holmes Group*" rule and provided that

patent counterclaims must be litigated in federal court.  Thus, when it opposed

TransCardiac Therapeutics, Inc.'s ("TCT's") prior motion to remand, Emory University ("Emory") noted that if the case was remanded, it "may be required to file a declaratory judgment counterclaim" regarding certain patents it co-owns with Georgia Tech Research Corp. ("GTRC"), with the result that the case would be "re-removed" in accordance with the America Invents Act of 2011 ("AIA").

Although this Court ruled that TCT's Complaint was insufficient to trigger federal patent law jurisdiction, it recognized the analysis could change if Emory (or GTRC) asserted a patent counterclaim.  *See TransCardiac Therapeutics, Inc. v. Yoganathan*, No. 1:13-CV-03089-AT, 2014 WL 1624086, at *7, *8 & n.15,  (N.D. Ga. Feb. 28, 2014) ("First Remand Order").  Among other things, a patent counterclaim would arise under federal patent law and would provide a basis for exercising supplemental jurisdiction over the remaining claims.  *See id.* *7-*9.

Following remand, Emory and GTRC timely answered and asserted patent counterclaims, seeking a declaration that Dr. Lattouf properly is not named as a co-inventor on U.S. Patent No. 7,846,123 (the "'123 Patent") or on U.S. Patent No. 8,430,836 (the "'836 Patent").  *See* Dkt. Nos. 5 & 7.  On April 2, 2014 (within 30 days of receiving the First Remand Order), Emory re-removed this action pursuant to the AIA.  In an Order dated April 8, 2014, this Court recognized that Emory and GTRC had asserted "patent law" counterclaims.

Against this background, many of TCT's arguments completely miss the mark, especially those that rely on pre-AIA authorities.  Emory did not "essentially disregard" the prior remand Order (Br. in Supp. of Mot. to Remand, at 2); to the contrary, Emory (and GTRC) filed the anticipated patent counterclaims the Court referenced, after which Emory re-removed the case as it had said it would.  Contrary to TCT's rhetorical assertion that "[t]his is not the law" (*id.*), Emory's and GTRC's counterclaims do in fact trigger exclusive federal jurisdiction; that is exactly the jurisdictional change effectuated by the 2011 AIA amendments that, *inter alia*, added 28 U.S.C. § 1454.  Finally, TCT's contention that Defendants "were more than a year too late in noticing removal" (*id.* at 5), is completely misguided and misses the mark, given that Emory timely attempted to remove the original Complaint and – within 30 days of receiving the First Remand Order – asserted its patent counterclaim and removed the case again.

Because Emory's and GTRC's patent counterclaims come within this Court's exclusive federal jurisdiction, they support supplemental jurisdiction over TCT's claims.  Although this Court found TCT's claims were not sufficient standing alone to confer federal jurisdiction, it recognized that most of TCT's claims "involve allegations that Defendants falsely claimed invention of the Release IP."  First Remand Order, 2014 WL 1624086, at *6.  Such closely-related claims should be

litigated alongside Emory's and GRTC's patent inventorship counterclaims, rather than splintered into a separate case.  Finally, TCT lacks standing to invoke the sovereign immunity of the Georgia Tech individual Defendants.

Accordingly, TCT's Motion to Remand should be denied.

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

TCT filed its Complaint in Fulton County State Court on August 9, 2013. Dkt. No. 1-1.  TCT's Complaint asserts a variety of claims against several different Defendants, including claims for breach of contract, fraud, and tortious interference against Emory.  TCT's claims involve allegations that the Defendants improperly claimed inventorship of "intellectual property" purportedly invented by Dr. Lattouf and owned by TCT.  *Id.* ¶ 195.

### A.    The First Removal

Emory (joined by Defendants GTRC, Georgia Tech Foundation, and Dr. Thourani) originally removed to this Court on September 16, 2013, on the grounds that TCT's claims necessarily involved issues of inventorship of U.S. Patents and patent applications.  *See* No. 1:13-cv-03089-AT, Dkt. No. 1.  Following removal, Emory (along with the Georgia Tech entities and Dr. Thourani) moved for a more definite statement of TCT's claims.  *See* No. 1:13-cv-03089-AT, Dkt. Nos. 7, 10, & 12.  These motions sought clarification of multiple aspects of TCT's Complaint, including the parameters of the vaguely-defined "intellectual property" giving rise

to TCT's claims. *See, e.g.,* No. 1:13-cv-03089-AT, Dkt. No. 12-1 at 5-8.

Specifically, Emory reiterated its request[1] that TCT explain precisely whether its claims are based on the patents and patent applications referenced in the "Release Letters" Emory issued to Dr. Lattouf (and, if so, which ones) or were instead based on Dr. Lattouf's much broader claim, as made in a 2013 patent application, to exclusive rights over the entire field of transapical heart access surgical methods.[2] *Id.* These motions remain pending.[3]

TCT moved to remand, disputing that its claims necessarily involved federal patent inventorship issues. *See* No. 1:13-cv-03089-AT, Dkt. No. 16. TCT's vigorous disavowal of any federal patent law issues in connection with its prior

---

[1] Emory previously had asked Dr. Lattouf to provide such specificity in Emory's letter dated February 4, 2013, in which it responded to Dr. Lattouf's letter dated November 16, 2012. *See* TCT's Compl., Exs. G5 & G1. Emory's February 4, 2013 response confirms that TCT's effort to invoke O.C.G.A. § 24-14-23 is meritless, because that statute only applies when a party receiving a letter in the ordinary course of business does not respond.

[2] For the Court's information, on September 22, 2013 and February 6, 2014, the U.S. Patent and Trademark Office rejected all claims in Dr. Lattouf's patent application number 13/871,505. The application remains pending, and Dr. Lattouf has the opportunity to amend his claims and/or request reconsideration. Based on Dr. Lattouf's prior correspondence, this appears to be the 2013 application in which he asserted a broad claim to the entire field of transapical heart access surgical methods.

[3] On April 17, 2014, this Court granted the parties' joint motion to extend TCT's deadline to respond to these motions, and to stay the parties' other initial deadlines, until after the Court rules on this Motion to Remand. Dkt. No. 22.

motion to remand contrasts sharply with its current arguments that, because the parties knew all along that U.S. Patents were involved, Defendants "were more than a year too late in noticing removal."  Br. in Supp. of Mot. to Remand, at 5.

In opposing TCT's first motion to remand, Emory explained that it intended to assert a patent counterclaim.  *See* No. 1:13-cv-03089-AT, Dkt. No. 20.  Emory stated that "when Emory is required to answer it may be required to file a declaratory judgment counterclaim regarding certain patents it co-owns with Defendant [GTRC]."  *Id.*, at 2-3; *see also id.* at 24 ("If Emory must answer TCT's claims, it anticipates filing a counterclaim seeking declaratory relief relative to the patent inventorship issues raised by TCT's claims.").  Emory also briefly outlined the recent changes to federal patent jurisdiction under the AIA.  *Id.* at 23-24.

### B.    The First Remand Order

In the First Remand Order, this Court recognized that six of TCT's claims "involve allegations that Defendants falsely claimed invention of the Release IP." First Remand Order, 2014 WL 1624086, at *6.  Given the ambiguity in TCT's Complaint as to whether its claims were based on issued patents or pending patent applications, the First Remand Order gave Emory the "benefit of the doubt that Plaintiffs claims exclusively relate to the subject matter of patent applications."  *Id.* at *7.  Nevertheless, after noting "the absence of patent counterclaims," the First Remand Order ruled TCT's Complaint did not present an actual patent inventorship

dispute or raise a substantial federal patent inventorship issue.  *Id.* at *7-*8.[4]

Because none of TCT's claims provided federal jurisdiction, the First Remand

Order found no basis on which to exercise supplemental jurisdiction  *Id.* at *9.

### C.    Emory's and GTRC's Patent Counterclaims

Following the First Remand Order, Emory and GTRC timely filed federal

patent declaratory judgment counterclaims against TCT on March 31, 2014,[5]

adding Dr. Lattouf as an additional counterclaim defendant.  Dkt. Nos. 5 & 7.  The

counterclaims by Emory and GTRC seek a declaration that, pursuant to 35 U.S.C.

§ 256, Dr. Lattouf properly is not named as an inventor on the '123 Patent or on the

'836 Patent.  Dkt. No. 5, at 33-35; Dkt. No. 7, at 51-58.

### D.    Emory's Second Notice of Removal

On April 2, 2014 (30 days after receiving e-notice of the First Remand

Order), Emory filed its "Second Notice of Removal" (again joined by GTRC,

---

[4] The Court's analysis of the "actually disputed" factor acknowledged Emory's anticipated filing of patent counterclaims, but ruled that, "as the case currently stands, the litigation of Plaintiff's claims would not require the Court to rule on the inventorship of any patents or patent applications."  *See id.* at *8 & n.15.

[5] Pursuant to a letter agreement between the parties, the removing Defendants' answers were due 30 days after the First Remand Order.  In an abundance of caution, Emory and GTRC filed their answers and counterclaims 30 days after the date this Court signed the First Remand Order on February 28, 2014, and Emory re-removed this action within 30 days of the parties' receipt of the First Remand Order on March 3, 2014 (and two days after Emory's receipt of GTRC's declaratory judgment patent counterclaim).

Georgia Tech Foundation, and Dr. Thourani).  Dkt. No. 1.  Emory explained that the Second Notice of Removal was predicated on the patent counterclaims asserted by it and GTRC, which must be adjudicated in this federal court pursuant to the 2011 amendments to 28 U.S.C. §§ 1338(a) and 1454.[6]

This Court acknowledged that Emory's and GTRC's counterclaims "fall under the purview of federal patent law" in its Order dated April 8, 2014.  *See* Dkt. No. 3, at 2.  On April 9, 2014 the Court further provided notice to the U.S. Patent and Trademark Office regarding the inclusion of the '123 Patent and the '836 Patent in this case.  Dkt. No. 12.

On April 16, 2014, TCT filed the pending Motion to Remand.  Dkt. No. 20. Despite quoting language from Emory's prior briefing explaining its anticipated patent counterclaim, TCT makes no effort to address the 2011 jurisdictional amendments explicitly authorizing Emory's patent counterclaim-based removal. To the contrary, TCT offers an extended "timing" objection that in effect concedes that "Dr. Lattouf and, thus, TCT, were asserting the intellectual property ownership rights as of November 2012."  Br. in Supp. of Mot. to Remand, at 7.

---

[6]  *See esp.* Emory's Second Notice of Removal, Dkt. No. 1, at ¶ 11 ("Federal courts have original jurisdiction over actions in which a federal patent law counterclaim is presented," citing *inter alia University of Ky. Research Foundation, Inc. v. Niadyne, Inc.*, Civ. No. 13-16-GFVT, 2013 WL 5943921, at *5 (E.D. Ky. Nov. 5, 2013)).

On April 21, 2014, TCT replied to the counterclaims.  *See* Dkt. Nos. 23 & 24; *see also* Dkt. Nos. 32 & 33 (Dr. Lattouf's Replies).  TCT admitted that TCT and Dr. Lattouf "claim that Dr. Lattouf invented the intellectual property identified in the Lattouf Releases and outlined in the Complaint and that *that intellectual property forms the bases of the '123 Patent and '836 Patent*."  *See, e.g.,* Dkt. No. 24 ¶ 32, at 16-17 (emphasis added).  This response essentially concedes that TCT's claims dispute the inventorship of Emory's and GTRC's patents.

## II.   ARGUMENT AND CITATION TO AUTHORITY

In 2011, Congress enacted the so-called "*Holmes Group* fix," expressly authorizing removal based on (and eliminating state court jurisdiction over) a federal patent counterclaim.  *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, at § 19 (2011).  In accordance with this provision, Emory promptly removed this action after it and GTRC filed federal patent counterclaims seeking a declaratory judgment as to inventorship of the '123 and '836 Patents.[7] These counterclaims authorize supplemental jurisdiction over TCT's claims, and discretionary remand of those claims is not warranted.  Accordingly, TCT's Motion to Remand should be denied.

---

[7] Emory timely filed its counterclaims when it was required to answer.  *Cf., e.g., Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1089 (D. Del. 1984) (dismissing stand-alone counterclaims filed prior to answer after interpreting Rules 7(a), 12(a), and 13(a) to require counterclaims to be stated in a "pleading").

### A.    Emory's Removal Was Proper Under 28 U.S.C. § 1454(a)

In *Holmes Group, Inc. v. Vornado Air Circulation System, Inc.*, 535 U.S. 826 (2002), the Supreme Court held that a patent counterclaim did not give rise to federal jurisdiction.  The AIA changed that rule by modifying several jurisdictional statutes and adding 28 U.S.C. § 1454.

Specifically, 28 U.S.C. § 1338(a) was amended to provide that "[n]o State court shall have jurisdiction over *any claim* for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338(a) (emphasis added).  The Federal Circuit's jurisdictional statute, 28 U.S.C. § 1295(a)(1), was amended to provide that it has exclusive jurisdiction of "an appeal from a final decision of a district court of the United States . . . in any civil action in which a party has asserted a compulsory counterclaim arising under[] any Act of Congress relating to patents . . . ."  And a new removal statute was added as 28 U.S.C. § 1454, providing in part:

> A civil action in which *any party* asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights may be removed to the district court of the United States for the district and division embracing the place where the action is pending.

28 U.S.C. § 1454(a) (emphasis added).  Section 1454 made other changes as well, including eliminating the requirement of unanimity for removal of federal patent cases and authorizing district courts to extend the time limit for such removals.

The few cases construing these new provisions of the AIA confirm they were intended to abrogate *Holmes Group* and allow removal to be predicated on patent counterclaims.  The district court in *University of Kentucky Research Foundation, Inc. v. Niadyne, Inc.*, explained that the AIA "had the effect of abrogating *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.* by allowing counterclaims arising under federal patent law to provide grounds for federal removal jurisdiction."  Civ. No. 13-16-GFVT, 2013 WL 5943921, at *5 (E.D. Ky. Nov. 5, 2013) (citing, *inter alia*, Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539 (2012)).  The *Niadyne* court went on to explain that, by enacting § 1454:

> Congress has broadened federal court removal jurisdiction to better ensure that whenever claims arise under federal patent law, they are removable, irrespective of who asserted them. Thus, [the defendant's] counterclaim for declaratory judgment may serve as the basis for federal removal jurisdiction so long as it arises under federal patent law.

*Id.*

Another district court recently agreed with the *Niadyne* court, ruling that the AIA "added a new removal statute, which allows '*any party* [who] asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights' to remove that case to federal court."  *Andrews v. Daughtry*, No. 1:13cv408, 2014 WL 184398, at *3 (M.D.N.C. Jan. 15, 2014).  "No

longer is a defendant with a patent or copyright counterclaim bound by a plaintiff's well-pleaded state law complaint to litigate in a state court." *Id.*

Consistent with these authorities, Emory and GTRC asserted federal patent counterclaims on March 31, 2014, and thereafter Emory removed this action pursuant to 28 U.S.C. §§ 1338(a) and 1454 on April 2, 2014.  These counterclaims seek a declaratory judgment that Dr. Lattouf properly is not named as an inventor on the '123 Patent or the '836 Patent.  As the Court already has recognized, federal patent "'inventorship is indisputably a question of federal patent law.'"  First Remand Order, 2014 WL 1624086, at *4 (quoting *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010)).  Indeed, TCT acknowledges in its current briefing that the "newly filed counterclaims are based on federal patent laws, including 35 U.S.C. § 256."  Br. in Supp. of Mot. to Remand, at 13.  These counterclaims authorize removal under 28 U.S.C. §§ 1338(a) and 1454, as amended by the AIA.

Notwithstanding that Emory had discussed the AIA's "*Holmes Group* fix" and cited the *Niadyne* case in its Second Notice of Removal, TCT asserts that "removal cannot be based on a counterclaim."  Br. in Supp. of Mot. to Remand, at 10.  This argument completely ignores the 2011 amendments and instead relies on

- 12 -

authorities applying pre-AIA law.[8]   The language of section 1454 is clear and has

been consistently applied in district court decisions following its enactment.   TCT

has no authority or argument to the contrary, and thus this Court should find that

Emory properly removed based on its and GTRC's patent counterclaims.

**B.      Emory's Removal Was Timely Under 28 U.S.C. § 1446(b)**

TCT argues "the 30-day deadline was triggered by at least November 2012,

making Defendants' remand [sic] notice more than one year too late …."  Br. in

Supp. of Mot. to Remand, at 9-10.   Leaving aside the inconsistency of this

argument with TCT's prior position in its first motion to remand this action (which

motion was granted), Emory's latest removal was timely.

As an initial matter, Emory timely removed this action initially on

September 16, 2013, within 30 days of being served with TCT's Complaint.  *See*

No. 1:13-cv-03089-AT, Dkt. No. 1.   By failing to challenge the timeliness of that

---

[8] For example, TCT relies on *MWS, Inc. v. Knight Tech. Servs., Inc.*, No. 3:12-cv-354-WKW, 2012 WL 3435043 (M.D. Ala. Aug. 14, 2012), but *MWS* does not involve a patent counterclaim or § 1454.  Br. in Supp. of Mot. to Remand, at 9-10. Instead, *MWS* (a) involves a counterclaim that was asserted two years into the litigation for a purported violation of the Fair Credit Reporting Act and (b) applies the pre-AIA *Holmes Group* standard.  *MWS*, 2012 WL 3435043, at *2.  Similarly, while TCT continues to rely on *Gunn v. Minton*, 133 S. Ct. 1059 (2013), and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), those cases do not involve patent counterclaims and were filed before the effective date of the AIA (*Gunn* was filed in 2004).

removal as part of its first remand motion, TCT waived any objection to the first removal's timeliness.[9]

The parties received e-notice of the Court's First Remand Order on March 3, 2014. *See* No. 1:13-cv-03089-AT, Dkt. No. 27. By notifying Emory the Court had rejected Emory's position that TCT's claims authorized removal, the First Remand Order started the clock on Emory's obligation to effectuate any further changes to the pleadings (*e.g.*, by filing a patent counterclaim) and to remove the case again pursuant to amended sections 1338 and 1454.[10] Within 30 days of receipt of the First Remand Order, and within two days of receipt of GTRC's patent counterclaim (as well as the filing of its own patent counterclaim), Emory filed its Second Notice of Removal. Thus, Emory's Second Notice of Removal was timely.

One of the few cases discussing the AIA's recent removal amendments, *Andrews v. Daughtry*, No. 1:13cv408, 2014 WL 184398 (M.D.N.C. Jan. 15, 2014), confirms the timeliness of Emory's Second Notice of Removal. There, a defendant

---

[9] *See* 28 U.S.C. § 1447(c) (alleged procedural defects must be raised "within 30 days after the filing of the notice of removal"); *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 781 n.1 (11th Cir. 1989) (timeliness is waivable procedural defect).

[10] Contrary to TCT's assertions, Emory does not claim it "received" its own counterclaim (although Emory did "receive" GTRC's counterclaim, which independently authorized Emory to remove this action pursuant to § 1454(a)). Rather, Emory calculated its re-removal deadline from "receipt" of the First Remand Order, which confirmed that Emory (and GTRC) would be required to plead their patent counterclaims to support removal under § 1454. Emory said as much in its Second Notice of Removal. *See* Second Notice of Removal ¶ 7.

removed on the grounds that the plaintiff's claims necessarily required resolution of federal copyright issues. *Id.* at *2. The district court disagreed and remanded. *Id.* Following remand, the defendant asserted federal copyright counterclaims, after which it re-removed based on the AIA's 2011 amendments. *Id.*, at *3.

The plaintiff again moved to remand, challenging the timeliness of the second notice of removal. *Id.* at *3. The defendant argued that the 30-day clock began to run when it asserted its counterclaim. *Id.*, at *4. The district court disagreed, holding that the clock began to run on receipt of its first remand order:

> [The court's] decision [granting a motion for remand]
> constituted a writing within the meaning of section 1446(b)(3)
> and is one from which [the defendant] could ascertain that,
> because the case was not removable on the basis of Plaintiffs'
> complaint, it might be removable on the basis of an ownership
> claim alleged exclusively under the Copyright Act, should he
> wish to pursue it.

*Id.*, at *5. In accordance with *Andrews*, Emory filed its Second Notice of Removal within 30 days of receipt of the First Remand Order (and within two days of receipt of GTRC's federal patent counterclaim).[11]

---

[11] Unlike Emory and GTRC, the defendant in *Andrews* did not promptly file its federal copyright counterclaim and then remove within 30 days of the first remand order. *See id.* at *2-*3. Instead, the *Andrews* defendant sought certain litigation advantages while the case was pending in state court, including seeking a transfer of the action to the state court's business division and moving to dismiss. *Id.*

TCT does not discuss *Andrews* or cite authority addressing the applicability of § 1446(b)(3) to a removal based on the filing of a patent counterclaim.  Instead, it makes the nonsensical argument that, because a letter from Dr. Lattouf in November 2012 identified the patent law issues, Defendants "were more than a year too late in noticing removal."  Br. in Supp. of Mot. to Remand, at 5.

Pursuant to § 1446(b)(3), the November 2012 letter could not constitute the "other paper" triggering Emory's deadline to remove:

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Consistent with the statute's reference to post-case initiating filings (such as an "amended pleading, motion, [or] order"), the reference to "other paper" in this statute has been interpreted to refer to a paper served *after* the filing of a lawsuit.[12]

Moreover, the First Remand Order ruled that the Complaint (which included the November 16, 2012 letter as an exhibit) did not provide a basis for removal.

---

[12] *See, e.g., Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992) ("[t]he plain language of the second paragraph of § 1446(b) requires that if an 'other paper' is to start the thirty-day time period, a defendant must receive the 'other paper' after receiving the initial pleading"); *see also Kuxhausen v. BMW Financial Services N.A. LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) ("we have held that 'other paper' does not embrace 'any document received prior to receipt of the initial pleading'") (citation omitted).

*See* No. 1:13-cv-03089-AT, Dkt. No. 1.  Plaintiff's current argument that the November 16, 2012 letter provided a basis for removal is inconsistent with the conclusion that the Complaint and its exhibits (which are part of the Complaint pursuant to Fed. R. Civ. P. 10(c)) did not trigger federal removal jurisdiction.[13]

### C.    Exercising Supplemental Jurisdiction Over TCT's Claims Would Avoid Duplicative Proceedings and Potentially Inconsistent Rulings

Because Emory's and GTRC's counterclaims indisputably arise under federal patent law, TCT's closely-related claims fall within this Court's supplemental jurisdiction.  *See* 28 U.S.C. §§ 1454(d)(1) & 1367(a).[14]  TCT does not appear to challenge that its claims fall within this Court's supplemental jurisdiction arising from the patent counterclaims, instead arguing only that the Court should exercise its discretion to remand TCT's claims under 28 U.S.C. § 1367(c).  *See* Br. in Supp.

---

[13] Emory maintains that its Second Notice of Removal was timely.  Under the new statute, 28 U.S.C. § 1454(b)(2), however, the Court has discretion to extend the deadline set forth in 28 U.S.C. § 1446(b) for a defendant to remove a case.  Given that Emory filed its Second Notice of Removal within the deadline established by one of the few cases addressing this provision, Emory respectfully submits that a discretionary extension would be appropriate in the event the Court disagrees with its calculation of the deadline for filing the Second Notice of Removal.

[14] Even before the AIA, the Federal Circuit had ruled that, when one claim in a case arose under federal patent law, supplemental jurisdiction was proper over the non-patent claims.  *See, e.g., Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1331 (Fed. Cir. 1998) ("With one claim properly in federal court, the others follow under section 1367."); *HIF*, 600 F.3d at 1357 (directing consideration of supplemental jurisdiction over non-patent claims).

of Mot. to Remand, at 14-17.[15]  In any event, TCT's (and Dr. Lattouf's) replies to

the counterclaims admit that TCT and Dr. Lattouf "claim that Dr. Lattouf invented

the intellectual property identified in the Lattouf Releases and outlined in the

Complaint and that *that intellectual property forms the bases of the '123 Patent*

*and '836 Patent*."  *See* Dkt. No. 24 ¶ 32, at 16-17 (emphasis added).  This

admission is more than sufficient to satisfy the broad "case or controversy"

standard triggering supplemental jurisdiction.  *See Parker v. Scrap Metal*

*Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006).

With respect to discretionary remand under § 1367(c), TCT asserts its claims

present a "novel or complex issue of State law."  TCT asserts garden-variety

contract and tort claims that are vague and confusing, but not of any particular

legal complexity or special significance to the policies of the State of Georgia.  *See*

Compl. ¶¶ 176-244.  As the Eleventh Circuit explained in *Parker*, such claims

generally do not raise "novel or complex issues of state law."  468 F.3d at 743-44.

TCT also asserts that state law claims will "substantially predominate" over

claims arising under federal patent inventorship law.  But as quoted above, TCT

and Dr. Lattouf have admitted that TCT's claims implicate the '123 and '836

---

[15] The district court may remand non-patent claims only if those claims are not
within "supplemental jurisdiction," 28 U.S.C. § 1454(d)(1), and may exercise
discretion to remand claims within its supplemental jurisdiction "under the
circumstances specified in section 1367(c)."  28 U.S.C. § 1454(d)(2).

Patents.  *See* Dkt. No. 24 ¶ 32, at 16-17.  Given that this Court has exclusive jurisdiction over inventorship claims relative to the '123 and '836 Patents, TCT's closely-related state law claims should be adjudicated in this same proceeding.  *See Andrews*, 2014 WL 184398, at *3 (discussing the "*Holmes Group* fix" and stating that "[n]o longer is a defendant with a patent or copyright counterclaim bound by a plaintiff's well-pleaded state law complaint to litigate in a state court").

Moreover, although this Court previously held that TCT's claims, standing alone, were insufficient to trigger federal jurisdiction, the reasoning of the First Remand Order supports a determination that Emory's and GTRC's patent counterclaims are not "merely ancillary" to TCT's claims.  In analyzing TCT's prior motion to remand, the Court found that six of TCT's nine claims "involve allegations that Defendants falsely claimed invention" to TCT's intellectual property.  First Remand Order, 2014 WL 1624086, at *6 & n.8.[16]  Because TCT's Complaint was not clear as to the specific "Release IP" giving rise to TCT's claims,

---

[16] The Court found the following claims in TCT's Complaint involved allegations of false claims of inventorship:  "Plaintiff's claims for breach of contract (Count I), breach of duty of confidential relations (Count III); tortious interference with business relations (Count IV); breach of legal duties and contract (Count VI); conspiracy (Count VIII); and false advertising (Count IX)."  *Id.* n.8.  As to the remaining three claims for breach of oral contract (Count II), tortious interference with Emory Contract (Count V), and fraud (Count VII), the Court found that these claims presented alternative theories of recovery that "do not necessarily present a patent issue," but did not rule that the claims do not involve any issues of federal patent inventorship.  *See id.* at *5.

however, the Court had "no way to determine whether the dispute over the Release IP extends to issued patents [which are subject to a presumption of validity] or is limited to patent applications." *Id.* at *6. "Given this uncertainty," the Court afforded Emory the benefit of the doubt that TCT's claims "exclusively relate to the subject matter of patent applications" and assumed that federal patent inventorship would be a necessary element of TCT's state-law claims. *Id.* at *7.[17]

Nevertheless, "[i]n the absence of patent counterclaims" or other explanation of the relationship between Defendants' patent rights and TCT's vaguely-defined "Release IP," the First Remand Order found that patent inventorship issues were not "actually disputed." *Id.* at *7-*8; *see esp. id.* at *8 (noting that, as pled, "Plaintiff's claims would not affect any party's patent rights"). Emory and GTRC have now asserted patent counterclaims explicitly requesting a declaration that Dr. Lattouf properly is not named as an inventor on the '123 and '836 Patents, in response to which TCT and Dr. Lattouf have admitted that TCT's current claims rest on purported intellectual property that "forms the bases of the '123 Patent and

---

[17] The same "uncertainty" noted by the Court in the First Remand Order underlies Emory's (and the other removing Defendants') pending motions for more definite statement. Emory respectfully requests that, if TCT's current Motion to Remand is denied, the Court promptly consider and grant the pending motions for more definite statement, so that TCT will be required to clarify for the parties and the Court whether TCT's claims are based on the broad inventorship Dr. Lattouf claims in his 2013 patent application.

'836 Patent."  Thus, TCT and Dr. Lattouf no longer can dispute that federal patent rights are "actually disputed" in this litigation.

The First Remand Order further found that, because "litigation of Plaintiffs claims would not alter the patent rights of either party or require Plaintiff to challenge the validity of a patent or patent application," any inventorship issue was "not substantial."  *Id.* at *8.  By virtue of Emory's and GTRC's counterclaims (and TCT's and Dr. Lattouf's replies thereto), the parties have joined issue on whether Dr. Lattouf properly should be named as an inventor on the '123 and '836 Patents. These inventorship disputes could alter "live" patent rights of the parties and thus constitute "substantial" federal issues.  *Cf. Gunn*, 133 S. Ct. at 1066.

Thus, even before Emory and GTRC had asserted their patent counterclaims, the Court assumed TCT's claims necessarily presented a patent inventorship issue. First Remand Order, 2014 WL 1624086, at *7.  Although TCT's claims did not raise an actual dispute as to a specific patent or patent application, TCT's (and Dr. Lattouf's) replies to Emory's and GTRC's patent counterclaims have confirmed an actual and substantial dispute regarding inventorship of the '123 and '836 Patents. In these circumstances, Emory's and GTRC's federal patent claims – which must be litigated exclusively in this federal forum – constitute "the real body of [the] case," as opposed to an "appendage."  *Parker*, 468 F.3d at 744

Finally, TCT argues this case presents "exceptional circumstances."  This factor considers "judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together."  *Parker*, 468 F.3d at 745.  Considering TCT's "mirror image" claims with Emory's and GTRC's inventorship declaratory judgment counterclaims furthers judicial economy, because both parties' claims arise out of the same alleged facts and involve the same parties.  *See id.* at 746 ("Indeed, the policy of supplemental jurisdiction is to support the conservation of judicial energy and avoid multiplicity in litigation").  Moreover, if some claims are remanded to State Court, there would be a very real possibility of a "race to judgment" between the competing actions, because a declaration that Dr. Lattouf properly was not named as an inventor on the '123 and '836 Patents should preclude all or at least substantial aspects of TCT's claims.  Nor is there any concern with convenience or fairness, given this Court's close proximity to Fulton County State Court.

Accordingly, given the intertwined nature of the factual bases for Emory and GTRC's patent counterclaims and TCT's affirmative claims, the Court can and should exercise supplemental jurisdiction over TCT's claims under 28 U.S.C. § 1367.

**D.      TCT Cannot Seek Remand Based On The Georgia Tech Individual Defendants' Sovereign Immunity**

Despite disputing that the State is a proper party, TCT claims the assertion of sovereign immunity by the individual Georgia Tech Defendants "requires remand as a matter of law."  Br. in Supp. of Mot. to Remand, at 19.

As an initial matter, the individual Georgia Tech Defendants have not moved to remand and TCT lacks standing to invoke other parties' sovereign immunity.  "We have long recognized that a State's sovereign immunity is a *personal privilege* which it may waive at pleasure."[18]  Thus, courts have rejected non-immune parties' invocation of other parties' sovereign immunity on standing grounds.  *See, e.g., Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004) (holding that former court reporter plaintiff did "not have standing to raise the immunity defense on behalf of the [defendant] Superior Court" and that an "affirmative defense is the defendant's to raise, not the plaintiff's").

In any event, TCT cites no authority holding that the assertion of immunity by certain defendants mandates the remand of the entire case, as opposed to only the claims against the immune defendants.  As the Supreme Court explained in

---

[18] *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (internal quotation marks omitted) (emphasis added); *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (noting that "the Eleventh Amendment grants *the State* a legal power to assert a sovereign immunity defense should it choose to do so") (emphasis added).

*Schacht*, even when a State entity asserts that the Eleventh Amendment precludes a federal court from hearing an immunity-barred claim, this assertion does not "destroy removal jurisdiction over the remaining claims in the case." 524 U.S. at 392-93. Thus, even if TCT had standing to invoke this immunity, the proper remedy is partially to remand only the claims against the immune defendants.[19]

Moreover, "the Eleventh Amendment does not automatically deprive a court of original jurisdiction." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001). Thus, even when an immune defendant removed a case to federal court and thereby waived immunity from suit in a federal forum,[20] it retained its full *substantive* immunity from liability. *Stroud v. McIntosh*, 722 F.3d 1294, 1301-03 (11th Cir. 2013), cert. denied, 134 S. Ct. 958 (2014). This Court can effectuate the individual Georgia Tech Defendants' immunity from liability to the same extent as a Georgia court.

---

[19] *See McCall v. Dep't of Human Res.*, 176 F. Supp. 2d 1355, 1370 (M.D. Ga. 2001) (citing *Schacht* and explaining that "the Supreme Court has authorized district courts to partially remand cases when faced with an assertion of Eleventh Amendment immunity after removal"); *see also Diamond v. Cnty. of Sacramento*, No. Civ. 05-1606-DFL-DAD, 2006 WL 236902, at *2 (E.D. Cal. Jan. 31, 2006) (similarly granting partial remand).

[20] Under 28 U.S.C. § 1454(b)(1), the individual Georgia Tech Defendants were not required to (and did not) consent to Emory's removal.

## III.   CONCLUSION

For the foregoing reasons, TCT's Motion to Remand should be denied.

Respectfully submitted, May 5, 2014.

                       _s/ C. Allen Garrett Jr._

KILPATRICK TOWNSEND        Joel D. Bush II
   & STOCKTON LLP           Georgia Bar No. 098775
1100 Peachtree Street, Suite 2800    C. Allen Garrett Jr.
Atlanta, Georgia 30309-4528       Georgia Bar No. 286335
Telephone:  (404) 815-6500        Robert E. Buckley
Facsimile:  (404) 815-6555         Georgia Bar No. 140280
jbush@kilpatricktownsend.com
agarrett@kilpatricktownsend.com    *Counsel for Defendant and Counterclaim*
robuckley@kilpatricktownsend.com   *Plaintiff Emory University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2014, I electronically filed the foregoing

DEFENDANT AND COUNTERCLAIM PLAINTIFF EMORY UNIVERSITY'S

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO

REMAND with the Clerk of Court using the CM/ECF system, which will

automatically send email documentation of such filing to the following attorneys of

record:

| | |
|---|---|
| Amy Yervanian | ayervanian@kslaw.com |
| Holmes J. Hawkins , III | hhawkins@kslaw.com |
| James Joseph Mayberry | jmayberry@kslaw.com |
| James Robert Howard | jrh2393@comcast.net |
| Jill Warner | jwarner@mbwattorneys.com |
| John W. Crongeyer | jwc@birdlawgroup.com |
| Julie Adams Jacobs | jjacobs@law.ga.gov |
| Kristen Lin Beightol | klb@birdlawgroup.com |
| Michael E. Brooks | mbrooks@mbwattorneys.com |
| William Q. Bird | billbird@birdlawgroup.com |

Dated:  May 5, 2014.

　s/ C. Allen Garrett Jr.　　　　　　

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

C. Allen Garrett Jr.
Georgia Bar No. 286335
agarrett@kilpatricktownsend.com

*One of the Attorneys for Defendant and*
*Counterclaim Plaintiff Emory University*