IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRANSCARDIAC THERAPEUTICS, INC,

    Plaintiff and Counterclaim Defendant,

v.

AJIT YOGANATHAN, PH.D., JORGE H. JIMINEZ, PH.D., VINOD H. THOURANI, M.D., and GEORGIA TECH FOUNDATION, INC,

    Defendants,

and

EMORY UNIVERSITY and GEORGIA TECH RESEARCH CORPORATION,

    Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs

v.

OMAR M. LATTOUF, M.D., PH.D,

    Third-Party Defendant.

CIVIL ACTION NO.
1:14-CV-00981-AT

## **ORDER**

This is the second time Defendants have removed this case. The Court previously remanded this case for lack of subject matter jurisdiction. *See TransCardiac Therapeutics, Inc. v. Yoganathan*, No. 1:13-CV-3089-AT, 2014 WL

1624086 (N.D. Ga. Feb. 28, 2014).  The Court explained that the state law claims in Plaintiff TransCardiac Therapeutics, Inc.'s ("TCT") Complaint did not sufficiently implicate issues of patent inventorship and thus failed to establish federal jurisdiction under 28 U.S.C. § 1338(a).  Following remand, Defendants Emory University and Georgia Tech Research Corporation ("GTRC") promptly filed patent counterclaims against TCT and Dr. Lattouf[1] and again removed the case asserting jurisdiction pursuant to § 1338(a) (and its accompanying removal statute, § 1454(a)).

Defendants' counterclaims are based on their alleged uncertainty regarding whether TCT and Dr. Lattouf assert any claims of inventorship in connection with two specifically identified patents held by Defendants Emory and GTRC, the '123 and '836 patents.  In response, Plaintiff TCT timely filed the Motion to Remand [Doc. 20] which is now before the Court.  The Court thereafter issued two Orders [Docs. 42, 48] directing Dr. Lattouf and TCT to state whether each is making any inventorship claim pursuant to 35 U.S.C. 256 with respect to the two patents that form the basis of Defendants' counterclaims.[2]  (Docs. 5, 7)  TCT expressly disclaimed any interest in making such claims while Dr. Lattouf reserved the right to assert such claims.  (Docs. 46, 49)  For the reasons below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] TCT — and not Dr. Lattouf — was the party plaintiff in the original lawsuit filed in Superior Court and removed by Defendants to this Court.  For that reason, "adding Dr. Lattouf as an additional counterclaim defendant" is improper.  Rather, Emory and GTRC's claims against Dr. Lattouf are third-party claims.

[2]  The intellectual property subject matter involved here concerns transapical cardiac surgery.

## I.     Background

### A.     Plaintiff's Claims

Plaintiff originally brought this case in the State Court of Fulton County raising a host of state law claims, for breach of contract, interference with business relations, fraud, conspiracy, and false advertising.  The claims at issue arose from Defendants' purported bad faith conduct and breach of contracts with TCT relating to development work and confidentiality involving TCT's portfolio of 24 patents and intellectual property ("IP").

The IP portfolio referenced in TCT's Complaint is called the "Release Portfolio."  It contains IP that was invented by Dr. Lattouf; assigned by Emory (his employer) to Dr. Lattouf; and subsequently assigned by Dr. Lattouf to TCT (his startup company).  (Doc. 5 at 28.)  TCT alleges, among other things, that Defendants concealed and supported a competing startup, improperly disclosed to that startup some confidential information concerning IP that is or should be within the Release Portfolio, and ran a misleading public information campaign seeking to portray the individual Defendants as the owners and inventors of Dr. Lattouf's IP.

Ruling on the previous motion to remand in this case, the Court held that none of TCT's nine state law claims implicates the inventorship of the patents in the Release Portfolio to the extent required to justify federal jurisdiction.  *See TransCardiac*, 2014 WL 1624086 at *4–*8.

**B.     Defendants' Claims Relating to the Apica Portfolio**

Emory and GTRC licensed a second portfolio, referred to as the "Apica Portfolio," to the competing startup, Apica Cardiovascular, Ltd.  (Doc. 1-1 ¶¶ 128-34.)  After this case was remanded, Defendants Emory and GTRC (the "Counterclaimants") filed virtually identical "counterclaims" for declaratory judgment of patent inventorship concerning two patents in the Apica Portfolio that had never before been mentioned by name in the lawsuit and which were not part of TCT's portfolio: U.S. Patent Nos. 7,846,123 ("the '123 patent") on and 8,430,836 ("the '836 patent").

Counterclaimants seek a declaration that Dr. Lattouf is properly not named an inventor on those patents because, they assert, "Dr. Lattouf and TCT's broad claim of inventorship of the entire field [of transapical cardiac surgery] has created a controversy about the inventorship of the '123 Patent and the '836 Patent."  (Doc. 5 at 34.)  Counterclaimants seek federal jurisdiction over the entire case based on their counterclaims against TCT and third-party claims against Dr. Lattouf.

**C.     TCT and Dr. Lattouf's Differing Responses to the Counterclaims**

TCT and Dr. Lattouf filed contrasting responses to the Defendants' counterclaims.  In its Answer to Emory's counterclaim, TCT broadly alleges, "that Dr. Lattouf invented the intellectual property identified in the [Release Portfolio] and outlined in the Complaint and that [this] intellectual property forms the

bases of the '123 Patent and '836 Patent."  (Doc. 24 ¶ 32.)  However, in response to the Court's central guiding question whether TCT asserts any inventorship claim in connection with Defendants' '123 and '836 patents, TCT expressly affirmed that it "it is not making, and shall not make, any inventorship claim pursuant to 35 U.S.C. § 256" with regard to those patents.[3]  (Doc. 46 at 2.)

Unlike TCT, Dr. Lattouf responded to the Court's question regarding his inventorship claims in connection with the '123 and '836 patents by expressly affirming that "he cannot and will not waive his 35 U.S.C. § 256 rights with regard to" those patents.  (Doc. 49 at 2.)  This difference in the parties' approach to inventorship of the '123 and '836 patents is material.

## II.  Legal Standard

As the party seeking declaratory judgment jurisdiction, Emory bears the burden of establishing "that such jurisdiction existed at the time the claim for declaratory relief was filed."  *StoneEagle Servs., Inc. v. Gillman*, 746 F.3d 1059, 1062 (Fed. Cir. 2014) (quoting *King Pharms. Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010)).  "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014) (quoting 28 U.S.C. § 2201(a)).  "[T]o

---

[3] 35 U.S.C. § 256 is titled "Correction of named inventor."

demonstrate a sufficient controversy for a declaratory judgment claim that satisfies the requirements of Article III, 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

To be clear, "the Declaratory Judgment Act does not extend the jurisdiction of the federal courts." *Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 134 S. Ct. 843, 848 (2014) (quotation omitted).   Courts determining declaratory judgment jurisdiction examine whether "the character of the threatened action . . . would necessarily present a federal question." *Id.* (quotations omitted.)

## III.   Discussion

Counterclaimants have stated a viable claim for declaratory relief with regard to Dr. Lattouf's legal posture as to their two patents.  It is obvious from Dr. Lattouf's response to the Court's Order that he does dispute the inventorship of the '123 and '836 patents.   Counterclaimants and Dr. Lattouf himself have demonstrated the "immediacy and reality" required to create a justiciable controversy between Counterclaimants and Dr. Lattouf.  *See MedImmune,* 549 U.S. at 127; *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008).

The analysis is quite different for TCT.  TCT has expressly affirmed that it is not making and shall not make an inventorship claim on the patents at issue in

the counterclaims.   As if that were not enough, Counterclaimants have not identified a single statement or allegation by TCT that expressly claims with any reasonable certainty that TCT plans to contest inventorship of those patents.[4]  "A case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants — an objective standard that cannot be met by a purely subjective or speculative fear of future harm."  *Prasco,* 537 F.3d at 1339.  There is no real and immediate threat of future injury from TCT regarding inventorship of the '123 and '836 patents.

## IV.   Supplemental Jurisdiction

Defendants ask the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 and 1454 over any of Plaintiff's claims that do not support federal jurisdiction.  (Doc. 35 at 17; Docs. 36, 37.)  "A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to [federal court] . . . "  28 U.S.C. § 1454(a). However, if a civil action is removed solely under § 1454, as is the case here, the Court "shall" remand all claims that are not within the original or supplemental jurisdiction of the Court, 28 U.S.C. § 1454(d)(1), and "may" remand claims that

---

[4]   The Court recognizes that TCT alleges in its Answer to Defendants' counterclaims that Defendants falsely claim the "invention," "assignment," and "ownership" — sometimes publicly — of some IP that is or should be included in the Release IP under the governing contract between Emory and Dr. Lattouf.  (Doc. 1-1 ¶¶ 168, 179, 195, 205, 209, 210, 222, 229, 230, 237, 241.)  However, these allegations are consistent with TCT's contract claim.  Whether or not the parties' contract(s) encompassed Defendants' '123 and '836 patents can be determined by normal contract interpretation rules.

fall within § 1367(a) jurisdiction and also within § 1367(c).  28 U.S.C. § 1454(d)(2).

 TCT's nine state law claims do not fall within the supplemental jurisdiction of this Court under § 1367(a) because they do not arise out of a common nucleus of operative fact with the Third-Party claim for a declaration of patent inventorship.  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563-64 (11th Cir. 1994).  Cases arise out of a common nucleus of operative fact when "[t]hey will involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts."  *Palmer*, 22 F.3d at 1563-64.

 Plaintiff's claims will not require the same witnesses, presentation of the same evidence, nor determination of similar facts as the third-party claims.  The Court has already explained how Plaintiff need not rely on or prove inventorship in order to bring its state law claims.  *See TransCardiac*, 2014 WL 1624086 at *4–*8.  Thus, TCT's claims either: a) can be litigated without reaching issues of inventorship; or b) can proceed based on the presumption of validity accorded to an issued patent.  *Id.*  The evidence that will be needed to prove those claims instead will revolve around the scope of the contracts at issue and the conduct of parties in relation to those contracts and to each other.

 Likewise, Counterclaimants need not rely on or prove inventorship in order to bring defenses that, where relevant, are based on their own presumptively

valid patents.  *See id.* at *6–*7.  So even if TCT's claims in state court end up implicating the inventorship of the '123 and '836 patents — and the Court does not think that they will — no presentations of witnesses or determination of evidence will be needed before the court recognizes the presumptive validity of Defendants' inventorship claims.  That is particularly true following TCT's express affirmation that it "is not making and shall not make any inventorship claim" regarding the '123 and '836 patents.

Dr. Lattouf's contestation of inventorship, however, will require evidence, witnesses, and factual determinations.  "There is a presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence." *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed.Cir.1997) (citations omitted).  Dr. Lattouf will need to show that he "(1) contribute[d] in some significant manner to the conception or reduction to practice of the invention[s], (2) ma[d]e a contribution to the claimed invention[s] that is not insignificant in quality, when that contribution is measured against the dimension of the full invention[s], and (3) d[id] more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (citations omitted).  Such a showing — under what is called a "rule of reason" analysis — may require laboratory notebooks, contemporaneous personal notes, testimony of individuals involved in the invention and patent application process, and expert witnesses. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311,

1327 (Fed.Cir.2004); Stephen A. Becker, Patent Applications Handbook, § 5:17 Introduction—Determining inventorship (June 2014).

For these reasons, the evidence required for a court to adjudicate TCT's claims versus the third-party claims is distinct enough that the two do not arise out of a common nucleus of operative fact. There may be some minimal overlap, but the operative facts of TCT's claims will revolve around the nucleus of the contracts and conduct of the parties while the operative facts of the counterclaims will revolve around the nucleus of the invention, the patent, and the patent process. Where supplemental jurisdiction is lacking, the Court "shall" remand. 28 U.S.C. § 1454(d)(1).

Assuming, *arguendo*, that TCT's claims and the third-party claims do arise out of a common nucleus of operative fact, and therefore that the Court could permissively recognize supplemental jurisdiction over TCT's claims under § 1367(a) and § 1454(d)(1), the Court would still decline to exercise jurisdiction under § 1367(c)(2) and § 1454(d)(2). As explained above, § 1454(d)(2) grants the district court discretion to remand claims over which the Court has supplemental jurisdiction but that also fall within "the circumstances specified in section 1367(c)." 28 U.S.C. § 1454(d)(2). And under § 1367(c)(2), a district court may decline to exercise supplemental jurisdiction where the state law claim "substantially predominates over the claim" over which the court has original jurisdiction.

"A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) (quotation and citations omitted).  TCT's nine state law business tort and contract claims substantially predominate over the central, narrow issue of patent inventorship in the surviving third-party claims.  Deciding TCT's claims would require the district court to apply the Georgia law on 1) breach of contract; 2) breach of oral contract; 3) breach of duty of confidential relations; 4) tortious interference with business relations; 5) tortious interference with contract; 6) breach of legal duties and contract; 7) fraud; 8) conspiracy; and 9) false advertising.  Deciding inventorship of the '123 and '836 patents — a distinctly federal question — would be a mere appendage to that suit.  *See Morgan v. Christensen*, --- F. App'x ---, 2014 WL 4402063, at *1 (11th Cir. Sept. 8, 2014) (affirming district court's decline of supplemental jurisdiction under § 1367(c)(2)).  So even if TCT's claims were within the supplemental jurisdiction of the Court, the Court would decline to exercise jurisdiction under § 1367(c)(2) and § 1454(d)(2).

## V.     Conclusion

Plaintiff TCT's case remains one about state law claims.  Defendants have not shown a dispute with TCT over patent rights sufficient to confer federal jurisdiction.  The same cannot be said for Dr. Lattouf.  Even so, the claims against Dr. Lattouf do not confer supplemental jurisdiction over all claims in this action.

Accordingly, Plaintiff's Motion to Remand [Doc. 20] is **GRANTED IN PART** pursuant to 28 U.S.C. § 1454(d).  The Court **REMANDS** all claims in TCT's Complaint [Doc. 1-1] to the State Court of Fulton County.  As a result, all Motions for More Definite Statement based upon those claims [Docs. 11, 17, 18] are **DEEMED** moot in this Court.  The Court **DISMISSES** Emory and GTRC's counterclaims against TCT [Doc. 5 at 34; Doc. 7 at 52] for lack of jurisdiction.

Plaintiff's Motion to Remand [Doc. 20] is **DENIED IN PART** with regard to Emory and GTRC's third-party claims against Dr. Lattouf.  The only claims now before the Court are consolidated into one: a declaratory judgment action brought by Emory and GTRC seeking a declaration from the Court that Dr. Lattouf is properly not named an inventor on the '123 patent and the '836 patent.  The Clerk is therefore **DIRECTED** to recaption the case as *Emory University and Georgia Tech Research Corporation v. Omar M. Lattouf, M.D., Ph.D.*  The parties remaining in this Court are **DIRECTED** immediately to proceed under the Local Civil Rules of this District and, to the extent that they apply, the Rules of Practice for Patent Cases before the United States District Court for the Northern District of Georgia.

**IT IS SO ORDERED** this 14th day of November, 2014.

_____
**Amy Totenberg**
**United States District Judge**