# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

EMORY UNIVERSITY and GEORGIA
TECH RESEARCH CORPORATION,

      Plaintiffs,

v.

OMAR M. LATTOUF, M.D., PH.D.,

      Defendant.

CIVIL ACTION FILE

NO. 1:14-cv-00981-AT

## MEMORANDUM OF LAW OF
## PLAINTIFFS EMORY UNIVERSITY AND GEORGIA TECH
## RESEARCH CORPORATION OPPOSING
## DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant Dr. Lattouf refuses to clearly and unequivocally disavow his claim to be an inventor of the Apica Portfolio.[1]  Instead, Dr. Lattouf has repeatedly asserted—in this Court and in State Court by way of his company, Transcardiac Therapeutics, Inc. ("TCT")—that he invented the most fundamental subject matter disclosed in at least a portion of the Apica Portfolio.  Indeed, in his Answer to the Counterclaim in this Court, Dr. Latouff asserted that "he invented the intellectual property that . . . forms the bases of [those patents]."  Dkt 32 at 16-17.  As a result,

---

[1] The Apica Portfolio includes at least U.S. Patent Nos. 7,846,123, 8,430,836, and 8,858,489 ("the '123 Patent," "the '836 Patent," and "the '489 Patent," respectively).

a clear controversy is presented to the court, thereby establishing federal subject matter jurisdiction for the Declaratory Judgment Action.

However, Dr. Lattouf has the power to end this controversy.  He could do so by clearly agreeing to the proposed Consent Judgment, attached as Exhibit A, establishing that (i) he did not contribute to the conception of any inventions described or claimed in the '123 Patent, the '836 Patent, or the '489 Patent, or on any pending applications that are included in the Apica Portfolio, (ii) he is unable to (and will not) make any inventorship claim pursuant to 35 U.S.C. § 256 with respect to any patent that is a part of the Apica Portfolio, and (iii) he is not aware of any reason, fact, or circumstance demonstrating that any patent in the Apica Portfolio is invalid or unenforceable due to any purported act of fraud regarding the identification of the inventors or the inventive entity.  Ex. A ¶¶ 21-22.  Dr. Lattouf has not yet agreed to Plaintiffs' request.[2]

Dr. Latouff has not agreed to these clear disclaimers because he is now making, through his company TCT, contrary claims in the State Court action.  For example, in Dr. Lattouf's letter of November 16, 2012, attached to TCT's State Court Complaint and attached herein as Exhibit B, Dr. Lattouf asserts that the inventions

---

[2] Due to the holidays and the limited extension of time for this response to which Dr. Lattouf would agree, Plaintiffs forwarded Dr. Lattouf the draft Consent Judgment the day before this filing.

claimed in the '123 patent are, in fact, his.  In this letter Dr. Lattouf alleges that he "requested, paid for and instructed [the Georgia Tech inventors] to . . . test my invention of Transapical Access, which included full understanding of my invention." Ex. B at 17 (emphasis added).  In the same paragraph, Dr. Lattouf next alleges that "[these patent] claims for access for repair of heart valves" are briefly referenced in, among other things, the "2007 application" (i.e., the application that became the '123 patent),[3] and "are precisely my confidentially disclosed information." Id. (emphasis in original).

Dr. Lattouf's continuing contention that he is, in fact, an inventor of the subject matter disclosed in the Apica Portfolio leaves the patents at issue vulnerable to attack and thus creates a justiciable and immediate controversy that this Court should resolve.  Indeed, his various "waivers" and offers to "stand down," combined with his reservation of rights in order to claim himself as the true inventor serve to more sharply define (rather than end) the justiciable controversy.  By refusing to agree to the clear disclaimers set forth in paragraphs 21 and 22 of Exhibit A, Dr. Lattouf confirms the existence of an actual and immediate controversy.

---

[3] There is no doubt that the 2007 application that Dr. Lattouf refers to as claiming his invention is the application that led to the '123 Patent.  In the paragraph preceding these allegations, Dr. Lattouf describes this application in more detail, referring to it as "a patent application . . . published October 30, 2008, granted December 7, 2010 . . . ."  These dates correspond exactly to the filing, publication and grant dates of the application resulting in the '123 Patent.

Many entities, including Emory University ("Emory"), Georgia Tech Research Corporation ("GTRC"), venture capitalists and at least one publicly traded company, have expressed an interest in clearing the cloud created by Dr. Lattouf on the Apica Portfolio. Resolution of these issues in the federal judicial system according to federal patent law and review by the Federal Circuit provides consistency for issues of inventorship (and the ownership, validity and enforceability issues extending therefrom) according to federal law.

The justiciable controversy here—whether Dr. Lattouf is, in fact, an inventor—is further reflected in other issues that depend upon resolution of the inventorship issue. As a result of Dr. Lattouf's refusal to clearly and unequivocally disavow any claim (and the underlying alleged facts) of inventorship, a third party infringer could rely on Dr. Lattouf's refusal to assert that these three patents from the Apica Portfolio are invalid under 35 U.S.C. §102(f)[4] for failure to name a proper inventor (i.e., Dr. Lattouf). *See, e.g., Pannu v. Iolab Corp.*, 155 F. 3d 1344 (Fed. Cir. 1998); *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005). A third party infringer could also rely on Dr. Lattouf's continued assertions of inventorship to contend that these three patents are unenforceable under the doctrine of inequitable conduct based on the failure to name Dr. Lattouf as an

---

[4] The patents at issue resulted from applications filed before implementation of the America Invents Act ("AIA") and, therefore, 35 U.S.C. §102(f) applies here.

inventor, regardless of whether the inventorship entity could be corrected under Section 256.  *See, e.g.*, *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F. 3d 1315 (Fed. Cir. 2000).  Furthermore, a third party infringer could seek to license Dr. Lattouf's alleged inventorship rights, which he refers to as the "larger rights" he will continue to assert in the co-pending State Court action, to either sidestep an infringement claim or assert that the infringement claim must be dismissed for failure to join an indispensable party.

Dr. Lattouf's refusal to clearly and unequivocally disavow his claim of inventorship, his public assertion of inventorship in the State Court action by way of TCT and the fact that third parties could use these public assertions to challenge the validity of, or otherwise undermine, the Apica Portfolio, work together to create an immediate and justiciable controversy involving issues of federal patent law.  This Court should deny Dr. Lattouf's motion for reconsideration.

## I.    DR. LATTOUF'S PROCEDURAL ACTIONS INDICATE A DESIRE TO RETAIN AND ASSERT "LARGER" INVENTORSHIP RIGHTS

In their counterclaim, Emory and GTRC alleged that they jointly granted an exclusive license to practice certain transapical techniques and devices to a third party, Apica Cardiovascular Ltd. ("Apica").  The exclusively licensed "Apica Portfolio" included the '123 Patent, the '836 Patent, and then-pending applications that claimed priority to the '123 Patent.  Dr. Lattouf was <u>not</u> named as an inventor

in the '123 Patent or the '836 Patent or any such applications.  For example, Emory and GTRC alleged as follows:

> 38. The transapical techniques and devices that GTRC and Emory University have claimed were invented by persons other than Dr. Lattouf include U.S. Patent Nos. 8,430,836 and 7,846,123.

> 39. Dr. Lattouf and TCT's broad claim of inventorship of the entire field and specific allegations that Dr. Lattouf invented the IP licensed from GTRC and Emory University to Apica has created a controversy about the inventorship of U.S. Patent Nos. 8,430,836 and 7,846,123, which are patents within the field of transapical techniques and devices.

Dkt. 7 at 56-57; *see also* Dkt. 5 at 32-33.

In answer to Emory's allegations, Dr. Lattouf in pertinent part stated:  "Dr. Lattouf admits that he and TCT claim he invented the intellectual property identified in the Lattouf Releases and outlined in the Complaint and that that intellectual property forms the bases of the '123 Patent and the '836 Patent."  Dkt. 32 (emphasis added).

The Court then informed Dr. Lattouf and TCT that if each stated that they are "not making, and shall not make, any inventorship claim pursuant to 35 U.S.C. § 256 with regard to any patent identified in the Counterclaim, the Court will dismiss the Counterclaim for want of a case or controversy and remand the remaining state law claims to state court."  Dkt. 42 (emphasis in original); Dkt. 48.

TCT responded by making the stated representation, and the Court remanded TCT's claim to the State Court of Fulton County.  Dkt. 50.  In contrast, Dr. Lattouf stated that "he cannot and will not waive his 35 U.S.C. § 256 rights with regard to any patent referenced in the counterclaims in this litigation. i.e., the '123' and the '836' patents."  Dkt. 49.  As a result, the Court declined to remand Dr. Lattouf's claim to the State Court and consolidated the claims before this Court into one declaratory judgment action brought by Emory and GTRC seeking a declaration that Dr. Lattouf is properly not named an inventor on the '123 and '836 Patents.  Dkt. 50 at 12.  Thus, the inventorship issue had been joined.

Just before the parties filed the Preliminary Planning Report, Dr. Lattouf filed a "Notice" stating that he is "now prepared to stand down and waive any potential inventorship claim for the two specified patents.  Dr. Lattouf does not waive any other rights other than the narrow 35 U.S.C. § 256 rights at issue."  Dkt. 52 at 2 (emphasis added).  The Court construed Dr. Lattouf's Notice as a motion for reconsideration of the remand Order and directed him to file a memorandum of law supporting his Motion.  Dkt. 53.

In the Preliminary Planning Report, Emory and GTRC stated that they intended to seek leave to amend their claims to add a recently-issued Apica Portfolio patent—the '489 Patent—which is a continuation of the '123 Patent.  The Court then directed Dr. Lattouf to "state whether he is not making, and shall not make, any

inventorship claim pursuant to 35 U.S.C. § 256 with regard to U.S. Patent No.

8,858,489." Dkt. 61.  On December 23, 2014, Dr. Lattouf stated that:

> [H]e herein affirms that he is not making, and shall not
> make, any inventorship claim pursuant to 35 U.S.C. § 256
> with regard to the ['489 Patent].  Dr. Lattouf reserves all
> of his rights other than the narrow 35 U.S.C. § 256 rights
> at issue.  The larger rights and pre-existing claims at issue
> in the complaint, which are alleged as State Court claims,
> are not being waived by [TCT] nor are they being waived
> by Dr. Lattouf, who is not a party to those claims.

Dkt. 62 at 1.

## II.    DR. LATTOUF'S COVENANTS FAIL TO SATISFY HIS HEAVY BURDEN OF SHOWING THAT THIS ACTION IS MOOT

### A.    The law places a burden on Dr. Lattouf to show that his statements eliminate the inventorship dispute

To constitute a justiciable controversy, a declaratory judgment dispute must

be "definite and concrete, touching the legal relations of parties having adverse legal

interests; and that it be real and substantial and admit of specific relief through a

decree of a conclusive character, as distinguished from an opinion advising what the

law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech,

Inc.*, 549 U.S. 118, 127 (2007) (internal quotations and citation omitted).  Whether

an actual controversy exists is to be decided in light of "all the circumstances."  *Id.*

An actual controversy "must be extant at all stages of review, not merely at

the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 U.S.

43, 67 (1997) (quotation omitted).  Thus, if a party argues that the controversy has

"become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) (considering alleged mootness on appeal) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). That burden is "a heavy one." *W.T. Grant*, 345 U.S. at 633. Moreover, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 190 (2000)). In other words, the challenged action must not be capable of being resumed in the pending action or "any subsequent action." *Already*, 133 S. Ct. at 723 (emphasis added) (citing *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988)).

"Whether a covenant not to [proceed with the relevant action at issue] will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). With respect to the effect of waivers or covenants on subject-matter jurisdiction in declaratory judgment actions, Supreme Court and Federal Circuit jurisprudence focus on covenants not to sue. *See, e.g., id.*; *Already*, 133 S. Ct. at 723. The reasoning of these cases applies to other types of waivers or covenants in the context of declaratory judgment actions. *See, e.g., Auburn Univ. v. IBM*, 857 F.

Supp. 2d 1245, 1248-49 (M.D. Ala. 2012) (applying the "guiding principle" of *Revolution Eyewear* to determine whether an alleged infringer's representation to not use allegedly infringing technology eliminated the case or controversy of the declaratory judgment action).

In *Revolution Eyewear*, a declaratory-judgment defendant provided an insufficient covenant not to sue:

> Revolution and counter-defendant Gary Zelman hereby unconditionally covenant not to sue Aspex for patent infringement under the '913 patent based upon any activities and/or products made, used, or sold on or before the dismissal of this action (03-5965 case).

556 F.3d at 1296.   The district court reasoned that because Aspex had stopped making and selling the allegedly infringing product, Revolution's covenant not to sue removed the possibility of suit.  The Federal Circuit reversed.  The court pointed to the fact that Aspex already had in storage a quantity of product that it wished to sell again in the future.  *Id.* at 1299.  In addition, Revolution had stated on the record that it planned to return to court if Aspex reentered the market with such product. *Id.*  The Federal Circuit applied *MedImmune* and found a continuing justiciable controversy.  *Id.*

The Federal Circuit reached a similar decision previously in *SanDisk Corp. v. STMicro., Inc.*, 480 F.3d 1372, 1382-83 (Fed. Cir. 2007), ruling that a party's "direct and unequivocal statement" that "ST has absolutely no <u>plan</u> whatsoever to sue

SanDisk" failed to eliminate the controversy upon which the declaratory judgment action was based. *See id.* (emphasis added). The court looked to ST's course of conduct, determining that it indicated a "preparedness and willingness to enforce its patent rights despite [the direct and unequivocal] statement." *Id.* at 1383. In particular, the court pointed to the facts that ST had approached SanDisk, determined that SanDisk was infringing, and communicated that determination to SanDisk. The Court found that ST's "no <u>plan</u> whatsoever to sue SanDisk" was merely an attempt at "'extra-judicial patent enforcement with scare-the-customer-and-run tactics.'" *Id.* (emphasis added) (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). The Federal Circuit later pointed to *SanDisk* to highlight the distinction between merely stating that a party does not <u>intend</u> to pursue a course of action and agreeing that the party <u>would not</u> pursue that course of action. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007).

This Court provided a relevant ruling in *FedEx Corp. Servs. v. Eclipse IP LLC*, 15 F. Supp. 3d 1346, 1350 (N.D. Ga. 2013) (Totenberg, J.). In that case, Eclipse issued a covenant that it would (1) not sue FedEx and (2) not sue FedEx's customers in certain circumstances. *See id.* But the covenant expressly excluded suits in which "the infringement allegation includes a step or element of a patent claim that is performed or implemented solely by the customer or its agent." *Id.* The covenant thus did not dispel the threat of potential indemnification liability for FedEx. *Id.* As

a result, this Court found that "[a]bsent a covenant or other facts that eliminate the imminent threat of harm FedEx faces because of Eclipse's conduct, this case is not subject to dismissal for lack of subject matter jurisdiction."  *Id.*

### B.    Dr. Lattouf has failed to satisfy his burden of showing that no justiciable controversy exists

Dr. Lattouf's waiver and accompanying statements fail to end the controversy in this action.  *See, e.g.*, *Auburn Univ.*, 857 F. Supp. 2d at 1248-49 (applying the "guiding principle" of *Revolution Eyewear* to determine whether an alleged infringer's representation to not use allegedly infringing technology eliminated the case or controversy of the declaratory judgment action).

The first step in the present analysis is to determine what Dr. Lattouf's proposed "covenants" cover.  *See Revolution Eyewear*, 556 F.3d at 1297.  Dr. Lattouf has made two covenants.

First, with reference to the '123 and '836 Patents, Dr. Lattouf stated that he is "prepared to stand down and waive" any potential inventorship claim.  A "waiver" is nothing more than a voluntary relinquishment of a known right.  Dr. Lattouf's first covenant is therefore premised on his continuing claim that he has a known right— his alleged inventorship claim.  In offering this waiver, Dr. Lattouf merely affirms his belief that his inventorship rights do, in fact, exist.

Second, with reference to the '489 Patent, Dr. Lattouf states that he is not making and will not make an inventorship claim under 35 U.S.C. § 256. This second covenant is more subtle. While purporting to make the statement required by the Court, at least as to the "narrow 35 U.S.C. § 256 rights at issue," Dr. Lattouf expressly reserves his "larger rights . . . at issue in the [State Court] complaint[.]" Dr. Lattouf's reservation of "larger rights" swallows the purported covenant. Neither statement disavows the claim to inventorship asserted in his Answer and other pleadings, and Dr. Lattouf does not state in either instance that he is not an inventor; instead, he confirms that he is making (and intends to continue making, through TCT) this exact claim of inventorship in the State Court action. Indeed, the State Court complaint alleges that "the [transapical] system" referenced in the subject press release "is Dr. Lattouf's invention and TCT's property." Complaint, ¶ 132.

Dr. Lattouf's most recent statement that he is not and shall not make an inventorship claim under 35 U.S.C. § 256 is encumbered by a reservation of "larger rights" and a reservation of "all of his rights other than the narrow 35 U.S.C. § 256 . . . ." See Dkt 62 at 1. By making such reservations, Dr. Lattouf is maintaining his ability to assert in State Court that he is, in fact, an inventor of the Apica Portfolio inventions referenced in the Emory/Georgia Tech press release.

Neither covenant resolves the issues inherently raised by Dr. Lattouf's allegations. Instead, they leave the Apica Portfolio exposed to the very uncertainty that this declaratory action seeks to resolve.

For example, both of Dr. Lattouf's covenants leave open a third party defense under 35 U.S.C. § 102(f). In *Checkpoint*, *supra*, the parties disputed the validity of U.S. Patent No. 4,876,555, which named only Paul R. Jorgenson as the sole inventor. Defendant argued successfully on summary judgment that a third party, Franz Pichl, was an unnamed inventor. The Federal Circuit stated: "If nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid." 412 F. 3d at 1338. While the Federal Circuit reversed in that case because there was an issue of fact, the case demonstrates that the subject Apica Portfolio patents are subject to attack under § 102(f) based on Dr. Lattouf's factual allegations, regardless of whether Dr. Lattouf states that he is not making and shall not make an inventorship claim pursuant to § 256.

In *PerSeptive Biosystems*, *supra*, the trial court found that none of the asserted patents identified all of the true inventors and that the named inventors committed inequitable conduct during prosecution of these three patents by withholding the name of the true inventor. 225 F.3d at 1317-18. Despite relating directly to inventorship, the court's findings were separate and distinct from any issue relating to § 256. In other words, the inventorship rights of an unnamed inventor negatively

-14-

impacted the enforceability of the subject patents without involving a direct inventorship challenge.  The Federal Circuit affirmed.  Therefore, particularly in view of his broad claims of inventorship and allegations of fraud, Dr. Lattouf's statements that he is not making and shall not make a claim of inventorship under § 256 do not resolve the issues of inventorship created by Dr. Lattouf's refusal to disavow his factual allegations.  Even if his waiver was without reservation, or made in the manner in which the Court requested, Plaintiffs are faced with the consequences of such factual statements.

In future suits to enforce any of the patents in the Apica Portfolio, a third-party infringer may be able to seek a license from Dr. Lattouf under his "reserved" rights and attempt to assert his inventorship rights in those patents in order to defeat the claim of infringement.  *See, e.g.*, *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998).  Dr. Lattouf's limited covenants would not protect against any of the scenarios described above.

The next step in the analysis is to determine, in light of "all the circumstances," whether Dr. Lattouf's waiver or other statements moot the actual controversy between the parties.  To do so, Dr. Lattouf must meet the "formidable burden" of showing that it is "absolutely clear" that the issues presented cannot be expected to arise.  *See, e.g.*, *Already*, 133 S. Ct. at 727.

Dr. Lattouf has failed to meet that burden.  First, Dr. Lattouf retains to himself the status of an "inventor."  Second, Dr. Lattouf retains and actually asserts his "larger rights," which include his allegations of being an inventor.  Third, Dr. Lattouf's statements fail to eliminate the controversy that his allegations inherently raise with respect to the Apica Portfolio, as demonstrated by the *Checkpoint*, *PerSeptive Biosystems* and *Ethicon* cases discussed above.  Dr. Lattouf appears to want to shield himself from defending his alleged inventorship status in this Court, but wield that alleged status as a sword in the State Court.  Thus, even if the inherent issues described above were considered remote (which they are not), the immediacy of the State Court claims confirms the controversy between the parties.

The instant controversy can only be resolved by Dr. Lattouf acknowledging that he is <u>not</u> an inventor and that he has no knowledge of any fraud or deception committed in not naming him as an inventor of the '123, '836 and '489 Patents, or of any of the applications that comprise the Apica Portfolio.  Dr. Lattouf refuses to agree to such an acknowledgment, thus establishing the controversy.

**III    CONCLUSION**

Emory and GTRC have sought to resolve this controversy by offering to Dr. Lattouf the proposed Consent Judgment, which clearly and unequivocally states that Dr. Lattouf is not an inventor.  It also precludes collateral attacks on the subject Apica Portfolio patents based on Dr. Lattouf's underlying factual allegations of his

-16-

inventorship claim.   Since Dr. Lattouf has not agreed to execute the proposed Consent Judgment, it is clear that he is reserving an inventorship claim to himself as part of his reservation of "greater rights."   Thus the controversy remains and declaratory judgment subject matter jurisdiction exists.   This Court should deny Dr. Lattouf's motion for reconsideration.

Respectfully submitted this 7th day of January, 2015.

/s/ *Stephen M. Schaetzel*
Stephen M. Schaetzel (Ga. Bar No. 628653)
MEUNIER CARLIN & CURFMAN LLC
817 W. Peachtree St., NW, Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
sschaetzel@mcciplaw.com


Joel D. Bush II (Ga. Bar No. 098775)
C. Allen Garrett Jr. (Ga. Bar No. 286335)
Robert E. Buckley (Ga. Bar No. 140280)
KILPATRICK TOWNSEND
    & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
jbush@kilpatricktownsend.com
agarrett@kilpatricktownsend.com
robuckley@kilpatricktownsend.com

*Attorneys for Plaintiff Emory University*

/s/ *Thomas C. Lundin Jr. (w/express permission)*
Thomas C. Lundin Jr. (Ga. Bar No. 461141)
Holmes J. Hawkins, III (Ga. Bar No. 338681)
Amy Y. Jones (Ga. Bar No. 780817)
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5134

*Attorneys for Plaintiff Georgia Tech Research Corp.*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing **MEMORANDUM OF LAW OF PLAINTIFFS EMORY UNIVERSITY AND GEORGIA TECH RESEARCH CORPORATION OPPOSING DEFENDANT'S MOTION FOR RECONSIDERATION** complies with the font and point selections approved by the Court in L.R. 5.1B.  The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

Dated this 7th day of January, 2015.

/s/ *Stephen M. Schaetzel*
Stephen M. Schaetzel (Ga. Bar No. 628653)
MEUNIER CARLIN & CURFMAN LLC
817 W. Peachtree St., NW, Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
sschaetzel@mcciplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 7, 2015 a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all of the attorneys of record.

Dated this 7th day of January, 2015.

/s/ *Stephen M. Schaetzel*
Stephen M. Schaetzel (Ga. Bar No. 628653)
MEUNIER CARLIN & CURFMAN LLC
817 W. Peachtree St., NW, Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
sschaetzel@mcciplaw.com